## SNYDER v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4690.

Circuit Court of Appeals, Third Circuit.
Dec. 11, 1931.

Albert E. James and Harry A. Fellows, both of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and Sewall Key, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Edwin M. Niess, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

The petitioner had been dealing in the stock of the United Gas Improvement Company. Operating through two brokerage houses he acquired during the year 1924 thirty-four hundred shares through thirty-four transactions of purchase and sold none. During the year 1925 he acquired fourteen hundred shares through sixteen transactions of purchase and sold twenty-one hundred shares through eleven transactions of sale. Thus the purchases were, approximately, in one hundred share lots and the sales in two hundred share lots.

He was dealing on margin and pyramiding his purchases under the requirement that he at all times maintain a 33⅓% margin, unrealized profits being accepted by the brokers in reckoning the margin.

When, in the fluctuations of the market, the margin fell below this percentage, the brokers sold enough shares to bring it back. No such sales were required in 1924; many were required in 1925, thus showing gains or losses according as sales were set off against the early or late purchases. The petitioner in his 1925 tax return set off the 1925 sales against all of the 1925 purchases and the latest 1924 purchases, disclosing a loss of $10,-284.38. The Commissioner of Internal Revenue set off the 1925 sales against the early 1924 purchases, disclosing a profit of $20,-878.00, which so increased the petitioner's general income that the Commissioner determined a deficiency tax of $1,042.39. An order of the Board of Tax Appeals redetermining the deficiency in the same amount is here on the taxpayer's petition for review, assigning error to the Board for refusing to find from uncontradicted testimony that the shares last purchased were identified as the shares sold.

The case turns on Article 39 of Regulation 69, promulgated by the Treasury Department under the Revenue Act of 1926, which provides that:

"When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots cannot be determined, the stock sold shall be charged against the earliest purchases of such stock, * * *" and gain or loss computed accordingly.

Evidently this rule was framed with especial reference to gains and losses in marginal transactions where, as in this case, shares purchased by a customer, while legally "owned" by him, are evidenced by a certificate not in his name but in the name of the broker until the transaction is closed out by sale or payment of the full purchase price. The evidence of the transaction and of the customer's ownership is merely a book entry of a debit of the shares purchased against a credit of the margin paid. The shares are commingled with perhaps many thousand held by the broker for other customers, subject always to be hypothecated by him in raising the difference in money between the customer's margin and the purchase price of the shares, which of course the broker must pay in order to get a certificate. The shares are not delivered or earmarked or allocated to the customer even on the books.

Where shares "are sold from lots purchased at different dates and at different prices" in a marginal account it is clear that, in the absence of something else, the identity of the lots sold cannot be determined, hence the cited regulation, which is tersely called the "First in, first out" rule. The rule is an arbitrary one, as from the very nature of the case it must be; yet, again from the nature of the case, it is reasonable. Even so, the petitioner says it is not applicable to his situation, in which he reversed the "First in, first out" rule of the Treasury Department by applying one of his own, namely; "Last in, first out," on the contention that the shares he sold from time to time were identified by a witness as the "last in," that is, the last purchased, and that, as his testimony was not contradicted, the Board should have reversed the Commissioner.

True, the testimony was not contradicted, yet we cannot find that it discloses the requisite identification. What happened in each

account was that the broker, watching the petitioner's margin balance in relation to the minute to minute fluctuations of the market, gauged the account by keeping his eye on the most recent purchases and when a comparison of their figures with the tape showed the margin growing thin, he would sell enough shares to revive it. The broker thought, as he testified, he was selling the shares of the last purchases, though in no way earmarked or allocated. In other words, he conceived "from the technique of Mr. Synder's operations"—overloading the account—he was in each instance selling the shares latest purchased because it was those shares that, on a falling market, had embarrassed the account. Stated differently: But for the last purchases the account would not be embarrassed, therefore the broker sold what he thought were the offending shares, although a sale of shares purchased earlier would have restored the account just the same. This was a purely mental operation of the broker, or, as he himself testified, "a mental condition entirely," which falls short of evidential "identification." As this was all the evidence of identification in the case, it left the regulation, "First in, first out," in force and justified the determination of a deficiency tax.

The order of the Board of Tax Appeals is affirmed.