## SNYDER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5419.

Circuit Court of Appeals, Third Circuit.

Sept. 18, 1934.

Rehearing Denied Oct. 24, 1934.

Henry M. Ward, of Washington, D. C., for petitioner.

**6**

Frank J. Wideman, Asst. Atty. Gen., Lucius A. Buck, of Washington, D. C., and J. P. Jackson and Sewall Key, Sp. Assts. to Atty. Gen., for respondent.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

■ The Commissioner of Internal Revenue found a deficiency tax against Snyder arising out of marginal transactions in the year 1928 which were similar in character to marginal transactions of the same taxpayer in 1925 on which this court passed in Snyder v. Commissioner, 54 F.(2d) 57. The Commissioner claims the decision in that case is res judicata of the matter raised on the present petition. Although the law may be the same, the facts, though similar, are different and, being different, they were not passed upon in that case. We hold against the Commissioner's contention of res judicata.

From the deficiency tax assessed by the Commissioner in the instant case, reckoned by setting off the last sales of shares of stock against shares earliest purchased, Snyder appealed to the United States Board of Tax Appeals. That tribunal discussed in its opinion two questions: one, the validity of Article 58 of Regulations 74 promulgated under the Revenue Act of 1928; the other, the applicability of the regulation to the facts of this case. Snyder is here on petition to review the Board's order sustaining the tax assessed by the Commissioner.

The regulation whose validity is challenged is in these words:

"When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots can not be determined, the stocks sold shall be charged against the earliest purchases of such stock. * * *"

The validity of this regulation, and of like ones under previous statutes, now, for brevity, called the "First in, first out" rule, has repeatedly been sustained by this court and other courts. Snyder v. Commissioner (C. C. A.) 54 F.(2d) 57; Commissioner v. Merchants' & Manufacturers' Fire Insurance Company (C. C. A.) 72 F.(2d) 408; Skinner v. Eaton, Collector (C. C. A.) 45 F.(2d) 568; Howbert v. Penrose (C. C. A.) 38 F. (2d) 577, 579, 68 A. L. R. 820.

■ The usual ground of attack has been that the rule is arbitrary and capricious and therefore in contravention of the due process clause of the Fifth Amendment to the Constitution. This court has held that while the rule is, from the very nature of the situations to which it applies, fixed and peremptory and in that sense arbitrary, it is, from the latitude of its words, not inflexible or capricious and therefore is not unreasonable. Since this pronouncement, Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 76 L. Ed. 772, has been decided. On that case the petitioner here takes a new stand. By that decision the Supreme Court held that section 302 (c) of the Revenue Act of 1926 (26 USCA § 1094 (c) creating a presumption that gifts made within two years of the donor's death were made in contemplation of death, was unconstitutional. The petitioner says that the rule which, on failure to identify shares sold, affords a presumption that the shares sold were those first bought is likewise unconstitutional. There is really no analogy between the provision of the statute under consideration by the Supreme Court in the Heiner Case and the terms of the rule here under discussion. There the presumption was "conclusive" and made so by the statute. Here the presumption is rebuttable, hence constitutional. Cockrill v. California, 268 U. S. 258, 261, 45 S. Ct. 490, 69 L. Ed. 944; Yee Hem v. United States, 268 U. S. 178, 183, 184, 45 S. Ct. 470, 69 L. Ed. 904; Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 42, 43, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463. The taxpayer is given every opportunity to identify the shares he has sold and to prove his loss or gain accordingly. Indeed, the rule comes into operation only "when" the identity of the shares sold cannot be determined, which usually happens when the owner in ordering their sale has failed to identify the lots in which they were purchased. In such case there must be some way of determining for the benefit of the taxpayer his losses or gains in his taxable transactions and, similarly, of determining what taxes the government is entitled to exact. Except for this rule or some similar rule, efficiently to administer the revenue act, a vast multitude of potential taxpayers dealing in the purchase and sale of shares on margin and actually making profits would escape taxation because of their inability or disinclination to identify the shares sold and the government would lose the taxes which the statute imposes.

We re-state our judgment that the rule is valid.

■ The petitioner next contends that the rule, if valid, is not applicable to the instant

case because it is inconsistent with the Revenue Act of 1928 which provides (sections 11, 12, 21–23 [26 USCA § 2011, 2012, 2021–2023]) that there shall be levied, collected and paid "for each taxable year" normal and surtaxes at certain rates. The substance of this contention is that the annual tax is to be levied and paid only on transactions begun and completed within the "taxable year" and to that end the entire series of the petitioner's marginal transactions in 1928 (the tax year) should be segregated from all transactions in prior years and that transactions of sale in the tax year should be charged only against transactions of purchase in that year, leaving open and unanswered the question how profits from later sales of shares purchased earlier can be taxed. The infirmity in this contention lies in the fact that a transaction of sale of shares previously purchased, yielding a gain, is taxable in the year in which the transaction of sale takes place and the gain is made. 7 R. C. L. § 245. Until the shares, whenever purchased, are sold there is neither gain nor loss. A gain springs from a sale and the tax is imposed on the gain in the year of the transaction of sale. That is the "taxable year." Whether or not there is gain or loss in a sale of shares made in the tax year depends on what shares were sold, the last purchased or the first purchased, or shares intermediate the two, which always is a question answered by the taxpayer's evidence, or by the rule, as to the identity of the shares involved.

We find nothing substantial in this defense.

The petitioner's next position is that the "First in, first out" rule, if valid, is inapplicable to the facts of this case. The facts as stated by the petitioner himself are these:

In 1928 and several prior years the petitioning taxpayer dealt, through two brokerage houses in Philadelphia, in stock of the United Gas Improvement Company known to speculators as U. G. I. through marginal accounts by the process known as pyramiding.

"On January 1, 1928, (the beginning of the tax year) petitioner was long 5300 shares of U. G. I. * * *. During the year 1928 the brokers bought for petitioner's account, on his orders, 10,600 additional shares * * * and sold 7,900 shares * * *. On December 31, 1928 (the end of the tax year) petitioner's account was long 8,000 shares, an increase of 2700 shares for the year. * * * All purchases and sales were in the form of 'street certificates' for 100 shares each endorsed in blank by some brokerage house. They, (the certificates) were inextricably mingled with other securities pledged with banks. They (the certificates) were at all times incapable of identification as having been bought or sold for account of petitioner."

"All facts alleged are admitted except in regard to petitioner's intention. His intention (to sell the shares last bought) was proved at the trial by a statement received in lieu of evidence." (The interpolations are ours.) On these facts, and against the action of the Commissioner in charging the shares sold against shares earliest purchased, the petitioner takes the broad position that the rule in question "is inapplicable to sales of shares of stock in the course of operating on margin accounts, because on its face it assumes sales of shares of stock under circumstances which rendered them capable of identification."

In shorter words, his position is that shares of stock sold on margin are incapable of identification, hence the rule does not apply to such transactions.

From the petitioner's statement of facts and his position on the law, it is obvious he has confused identification of shares and identification of certificates in transactions of sale. The rule deals with the sale and identification of "shares of stock in a corporation," not with sale and identification of certificates. Shares of stock and certificates for shares of stock are different legal entities. Shares of stock "are intangible and rest in abstract legal contemplation." They are the interest or right which the owner has in the management, profits and assets of a corporation. 14 C. J. §§ 506, 509. Though incorporeal, they nevertheless are property and are the subject of conversion. 14 C. J. § 509; 7 R. C. L. § 166; Skinner v. Eaton, Collector (C. C. A.) 45 F.(2d) 568. A certificate of stock, on the other hand, is the symbol or paper evidence of the ownership of shares; it is not the stock itself. It is merely written evidence, and then only prima facie evidence, of the ownership thereof by the person designated therein and of the rights and liabilities resulting from such ownership. 14 C. J. § 698, 701, 702, 707, 709, 710, 1043. Howbert v. Penrose (C. C. A.) 38 F.(2d) 577, 579, 68 A. L. R. 820. A stockholder may prove his ownership of shares by evidence other than that of the certificate, 14 C. J. § 1272; and he may dispose of his shares and surrender his title therein by sale accompanied with delivery of a certificate in his name which he has endorsed with a blank assignment and power

of attorney authorizing the transfer. 14 C. J. §§ 1033, 1050; 7 R. C. L. §§ 239, 243. As between seller and buyer the shares pass by mere delivery of the certificate, so endorsed, though the transfer as between the new owner and the corporation is not complete until made on the books of the corporation. When the new owner of the shares sells them without first having them transferred to himself on the books of the corporation and makes delivery by handing over the certificate so endorsed in blank by the original holder and starts it on its wanderings through the "street," the shares may go in one direction and the certificate in another; the shares, however, always being represented (in the rapid shifting of certificates between brokers) by a like certificate in the name of another, with endorsement in blank, held for the owner. Then "ownership follows the owner, and not the certificates." Howbert v. Penrose (C. C. A.) 38 F.(2d) 577, 579, 68 A. L. R. 820. While not technically negotiable instruments, certificates endorsed in blank pass from hand to hand in the "street" and are regarded in a very extensive practice as quasi negotiable. 14 C. J. §§ 1033, 1041, 1043, 1044. Upon delivery of a certificate in the seller's name endorsed in blank, or upon delivery of a "street certificate" in the name of someone else, similarly endorsed, the contract of sale between buyer and seller (unless burdened with conditions) is complete and the transfer, within taxing statutes, takes place. 7 R. C. L. § 245.

■ From these observations, abundantly sustained by decisions, it is plain that the petitioner in this case owned shares of U. G. I. stock, though neither he nor his brokers ever held certificates for them in his name; and, owning them, he had power to sell them when he saw fit and make delivery by certificates, issued to other persons, endorsed by them in blank, and held for him by his brokers; and when he sold his shares, as he did, he suffered losses or made gains at the time he sold them. Whether or not there were losses or gains, and in what amounts, depends on what shares he sold and the figures at which they were purchased, that is, whether they were the shares he purchased in 1928, the tax year, or were shares he purchased in prior years. Certainly they were one or the other and he was bound to show that factor in the tax calculation by identifying the shares (as by identifying the "lots" in which they were purchased) both for his own protection in paying and for the protection of the government in exacting taxes. In this and perhaps in other ways the "shares" were "capable of identification." All he showed by way of identifying the shares he sold from "lots" previously purchased was his intention always to sell the shares last purchased. That may be true, yet he did not transmute his intention into action. He did not order his brokers to sell from any particular lot or otherwise give life to his intention. Skinner v. Eaton, Collector (C. C. A.) 45 F.(2d) 568, 569; Howbert v. Penrose (C. C. A.) 38 F.(2d) 577, 578, 68 A. L. R. 820. He proved what he had thought and also proved that he had done nothing about it. If a taxpayer's intention alone were to govern, it would in every instance be conclusive. Being an operation sealed in his mind, it could not be contradicted by anyone outside. Standing alone as in this case, or "in the absence of something else" as we said in the first Snyder Case, 54 F.(2d) 57, 58, the owner's evidence of his bare intention is not sufficient identification of shares he sold to take the case outside the "First in, first out" rule. On this issue we hold, in accord with our decision in Snyder v. Commissioner, 54 F.(2d) 57; Horner v. Commissioner (C. C. A.) 72 F.(2d) 407, and Commissioner v. Merchants' & Manufacturers' Fire Insurance Company (C. C. A.) 72 F. (2d) 408, the deficiency tax assessed against the petitioner must be sustained.

■ Finally, the petitioner represents that aside from the rule we have been discussing, the transactions which were the subject of the tax in question constituted a trade or business which he regularly carried on, within the meaning of section 22 of the Revenue Act of 1928 permitting (under section 23 (e) (1) deductions for losses so incurred. The petitioner averred in his petition for redetermination of the deficiency tax that during a term of years, including the tax year, "in addition to his regular employment as secretary of an insurance company on salary, (he) was engaged in a business regularly carried on for profit which * * * was the purchase and sale of shares of stock listed on" various exchanges. The Commissioner by his answer denied this averment. At the hearing it was stipulated that if the petitioner were present he would testify to its substance. The Commissioner introduced no evidence in contradiction nor did the Board pass upon the matter in its opinion. Taking the record and the evidence as they stand we must determine whether there was enough shown to compel the finding which the petitioner asks and to call in play the cited statute.

We cannot find on the petitioner's averment and meager evidence that his case falls

within the statute. It is clear that in certain situations a person who has organized a corporation and invested in its stock and has devoted most of his time to its management may be regarded as having regularly carried on the business and be entitled, under the statute, to make appropriate deductions of stock losses from income. Washburn v. Commissioner (C. C. A.) 51 F.(2d) 949; Schwinn v. Commissioner, 9 B. T. A. 1304. But lacking convincing evidence of a claimed trade or business regularly carried on, it is generally held that deductions of losses incurred in trade in a given tax year are limited to losses incurred in the actual business of the taxpayer as distinguished from isolated transactions, and do not include losses sustained through dealings on an exchange by one engaged in another business. Mente v. Eisner (C. C. A.) 266 F. 161, 11 A. L. R. 496; Washburn v. Commissioner (C. C. A.) 51 F.(2d) 949. We must assume from the order under review that, notwithstanding the silence of the Board on the subject, it found, that the petitioner was not engaged in the trade or business he averred. This finding on what may be a mixed question of law and fact is, in our opinion, sustained by the record.

The order of the United States Board of Tax Appeals is affirmed.