## RANKIN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5424.

Circuit Court of Appeals, Third Circuit.

Sept. 18, 1934.

John W. Townsend, of Washington, D. C., for petitioner.

J. P. Jackson, of Washington, D. C., for respondent.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

The Commissioner of Internal Revenue assessed a deficiency tax against Richard B. Turner for the tax year 1928. Turner petitioned the United States Board of Tax Appeals for a redetermination of the deficiency. His executor is here on petition to review the order of that tribunal sustaining the tax.

This case, like that of Snyder v. Commissioner (C. C. A.) 73 F.(2d) 5, arose out of confusion (this time by the Commissioner) in the terms "shares" and "certificates" in transactions of sale of stock on margin as affected by section 113 (a) of the Revenue Act of 1928 (26 USCA § 2113 (a) making cost the basis of taxation and by the administrative regulation (Article 58 of Regulations 74) providing that: "When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots can not be determined, the stock sold shall be charged against the earliest purchases of such stock. * * *"

This is the familiar "First in, first out" rule and is to be applied in this case [as it was in both Snyder Cases (C. C. A.) 54 F. (2d) 57 and Id. (C. C. A.) 73 F.(2d) 5] according as the "shares" sold have or have not been identified as shares purchased in certain lots, not according to identification of certificates for the shares.

Identification being a matter of fact, the facts on that issue are these:

Early in 1926, Turner purchased on marginal account with a Philadelphia broker 1200 shares of the stock of United Gas Improvement Company, known on the "street" as U. G. I. For nearly two years he had no further marginal transactions in this or any other stock. At the beginning of 1928 his marginal account was long 1500 shares of U. G. I., the additional 300 shares representing a twenty-five per cent. stock dividend credited to him late in 1926.

In 1928, Turner began playing the market. Included in many marginal transactions, not of present concern, he bought 1000 shares of U. G. I. and at one time sold 300 shares, at another 500 shares, and at still another 500 shares of that stock. By the end of 1928 (the tax year) Turner's account was long 1200 shares of U. G. I., the precise number he bought in 1926. The Commissioner in determining a deficiency tax applied the "First in, first out" rule on findings that of the 1300 shares which the petitioner sold in 1928 (the tax year) 1040 shares were out of the original 1200 purchased in 1926 and 260 were a part of the stock dividend he received in that year, and that the total basis for computing gain or loss should thus be reduced from the taxpayer's figures (which he reckoned, in part, on the sale of the 1000 shares he had bought in the tax year) to $99,735, the cost of 1300 shares first acquired by purchase and stock dividend, and the taxable profit should be correspondingly increased from $25,933.50 to $92,864, disclosing liability for a deficiency tax in the sum of $11,173.05.

If this were all there was in the case the deficiency tax and the theory of its assessment under the "First in, first out" rule would, without doubt, be right. But if there was "something else" in the case, as we said in Snyder v. Commissioner, 54 F.(2d) 57, 58, and it has to do with identification of the shares of U. G. I. sold in 1928 on whose gain the tax was levied, the assessment is open to question. There was something else; and it bore directly on identification of the shares and therefore on the application of the rule. The evidence on this point is substantially as follows:

Early in 1926 Turner received $20,000 in bonds as a distribution of his father's estate. He did not believe in bonds as an investment and desired to change his inheritance into stocks. Being in ill health, later becoming blind, he called in his attorney and directed him to have an account opened with a Philadelphia broker, have the broker sell the bonds and with the proceeds purchase on margin 1200 shares of United Gas Improvement Company stock. This was done, the debit balance later being increased to 1500 shares by the stock dividend, for all of which the broker held "street certificates", that is, certificates in the names of other persons, endorsed in blank.

The evidence shows conclusively that Turner was sentimental about keeping the original 1200 shares as an inheritance from his father; that his "intention" was to retain as an investment the shares originally purchased and sell in speculation the shares more recently acquired, which clearly was not enough to take the case out of the rule. Snyder v. Commissioner (C. C. A.) 54 F.(2d) 57; Snyder v. Commissioner (C. C. A.) 73 F. (2d) 5; Horner v. Commissioner (C. C. A.) 72 F.(2d) 407; Commissioner v. Merchants' & Manufacturers' Fire Insurance Company (C. C. A.) 72 F.(2d) 408; and that he made repeated declarations of that intention to his associates which, likewise, was not enough. Skinner v. Commissioner (C. C. A.) 45 F.(2d) 568.

Evidence of intention of the owner of shares in transactions of purchase and sale though not dispositive of the question of identification has, nevertheless, a bearing on the ultimate question, what the owner did about it. Commissioner v. Merchants' & Manufacturers' Fire Insurance Company (C. C. A.) 72 F.(2d) 408; Howbert v. Penrose (C. C. A.) 38 F.(2d) 577, 68 A. L. R. 820. What Turner did in this case, acting and speaking through his attorney, was to communicate to his broker his intention to hold for investment the shares of U. G. I. he originally purchased. His decisions to sell like shares later purchased were reached on that basis; his books and records were kept on that basis; and, accordingly, his income tax return was made on that basis. The Commissioner, the Board of Tax Appeals affirming him, ignored this action of the petitioner on the theory that the U. G. I. stock, which from time to time he purchased on margin and later sold, could be identified only by certificates; that as no certificates for shares were ever in his name, the shares sold could not be identified as shares purchased in any particular lot or at any particular time or price and, accordingly, charged the shares sold against those earliest purchased within the "First in, first out" rule.

That was error. What was bought and sold were shares, not certificates (discussed in Snyder v. Commissioner (C. C. A.) 73

F.(2d) 5; Meyer on The Law of Stock Brokers and Stock Exchanges, § 42). Shares as distinguished from certificates are property subject to conversion and capable of identification. We think the petitioner's communication to his broker of his intention to hold the 1200 shares first purchased as an investment was in effect an order to his broker not to sell those shares, and when, two years later, he ordered the broker to make two sales in lots of 500 shares each, they were, conformably with the original instructions, the 1000 shares last purchased. The petitioner's instructions excluding from sale the shares first purchased were in effect an identification of the shares later sold as those last purchased.

While the petitioner, in identifying his shares, might have been more specific in his instructions to his broker, those he gave stand uncontradicted; indeed, they have not been questioned. We think they were enough to take the case out of the rule and that, in consequence, the deficiency tax in issue is invalid to the extent that it is based on gains made in sales of U. G. I. shares reckoned on the purchase price of the original 1200 shares.

The order of the Board of Tax Appeals sustaining the deficiency tax assessed by the Commissioner is, for the reasons and to the extent indicated in this opinion, reversed.