**HELVERING, Commissioner of Internal Revenue, v. STIFEL.**

No. 3760.

Circuit Court of Appeals, Fourth Circuit.

Feb. 6, 1935.

Louise Foster, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Assts. to the Atty. Gen., on the brief), for petitioner.

J. Robert Sherrod, of Washington, D. C. (John E. McClure, Frederick O. Graves, and Miller & Chevalier, all of Washington, D. C., on the brief), for respondent.

Before SOPER, Circuit Judge, and Mc-CLINTIC and HAYES, District Judges.

PER CURIAM.

The Commissioner petitions for a review of the decision of the Board of Tax Appeals in favor of the estate of William F. Stifel, deceased, hereinafter called the taxpayer. The decision of the Board was based upon its earlier decision in the case of Von Gunten v. Commissioner, 28 B. T. A. 702, in which it was held that, where stock of one corporation is exchanged, in pursuance of a plan of reorganization, for stock of another, the cost of the stock thus acquired must be allocated equally to the separate shares acquired, and, when some particular lot of the new shares is sold, the cost thereof may not be allocated to some particular lot of the old shares.

The taxpayer in the pending case, during a period beginning February 18, 1917, and ending August 31, 1920, acquired on divers dates, at varying prices, a total of 75,626 shares of the Maryland Refining Company, at an aggregate cost of $279,-400.63; and during a period beginning January 28, 1919, and ending August 31, 1920, he also acquired, on divers dates, at varying prices, 102,552 shares of the stock of the Kay County Gas Company, at the aggregate price of $116,219. In the year 1921 the Marland Oil Company was formed, under a scheme of reorganization, to take over the properties of the two companies above mentioned, and, pursuant to the plan, one share of the oil company stock was issued for each ten shares of the refining company stock, and one share of the oil company's stock was issued for each twenty shares of the gas company's stock. Stifel mailed certificates for all of his stock in the first two companies to a depository, and received in exchange 12,690.2 shares of the stock of the oil company. No gain or loss was computed on this exchange.

Prior to 1929 Stifel disposed of 8,690 shares of the oil company's stock, retaining 4,000.2 shares at the beginning of 1929, from which he sold 2,500 shares during the year. The Commissioner determined the profit on the sale of these shares by using the cost of the earliest available purchases by Stifel of the stock of the two companies first mentioned,[1] whereby it was found that the total cost was $55,406.09, and a deficiency for the year 1929 in the amount of $10,615.15 was determined. If the cost of the 12,690.2 shares of the stock of the oil company received by Stifel in the exchange is calculated by averaging the cost of the shares of the two companies first named, it will be found that the cost per share was $31.175, and that the cost of

---

[1] Allowance was made for the 8,690 shares previously sold.

584

the 2,500 shares sold in the year 1929 was $77,937.50. The taxpayer used this figure in computing the tax, and the Board of Tax Appeals approved the method, and accordingly found a deficiency of only $7,798.72, instead of $10,615.15 as claimed by the Commissioner.

The government contends that, where stock acquired subsequent to March 1, 1913, is surrendered for other stock, in a nontaxable exchange, as defined in section 112 (b) (3) of the Revenue Act of 1928, 45 Stat. 791 (26 USCA § 2112 (b) (3), and part of the stock received is sold, the basis for determining the gain or loss, under section 113 (a) (6), of the act (26 USCA § 2113 (a) (6), is the cost of the old shares exchanged, for the stock sold, and, when the shares sold are not identified with a particular lot of the shares surrendered, the sale will be presumed to have been made from the earliest acquired shares of the old stock. It is said that, since the transaction under which Stifel acquired the new stock was properly treated as a nontaxable exchange, within the meaning of section 202 (b) of the Revenue Act of 1918, 40 Stat. 1057 (for similar provision in the Revenue Act of 1928 see section 112 (b) (3), the gain must be calculated by applying the rule in section 113 (a) (6) of the Revenue Act of 1928, that, when property is acquired upon such a nontaxable exchange, the basis for calculating the profit or loss shall be the same as in the case of the property exchanged. So it is contended that stock so acquired must be treated, when sold, as if it were a sale of the old stock, and, when there is nothing to identify the shares of new stock sold with any particular old shares, the so-called "first in, first out," rule should be applied, as provided in article 58 of Treasury Regulations 74 under the Revenue Act of 1928, that, when shares of stock in a corporation are sold from lots purchased at different dates and at varying prices, and the identity of the lots cannot be determined, the stock sold shall be charged against the earliest purchase of the stock. See Snyder v. Commissioner (C. C. A.) 54 F.(2d) 57; Skinner v. Eaton (C. C. A.) 45 F.(2d) 568; Howbert v. Penrose (C. C. A.) 38 F.(2d) 577, 68 A. L. R. 820.

The Board of Tax Appeals held the contrary in Von Gunten v. Commissioner, supra, in which the taxpayer sold stock that he had received in exchange for shares of another corporation purchased at divers dates at varying prices. It is not necessary in the pending case to decide whether the first in, first out, rule should be applied when the stock given in the exchange consists of shares of only a single corporation; for, in the pending case, the situation is affected by the fact that the shares given in exchange consisted of shares of two separate corporations, and were acquired in the case of both corporations at varying prices at different times. We are of the opinion that under such circumstances there is no practicable way of determining the cost of the shares received in exchange than that which was adopted by the Board of Tax Appeals. The properties owned by the two earlier companies were taken over by the new company in the reorganization, and shares of stock of the latter necessarily represented undivided interests in the combined assets, which prior to the merger had been represented by the shares of the two separate corporations respectively. The shares of the oil company which Stifel sold in 1929 did not represent either the shares of the refining company or the shares of the gas company alone, but a combination of both, and hence any calculation of the cost of the shares sold, based upon the original cost of the shares of only one of the two companies, would be fallacious. The cost of both must be considered, and a correct result can be obtained only by ascertaining the average cost of all the shares, in exchange for which the new stock was acquired.

Affirmed.