## PERKINS v. UNITED STATES.

### No. 42307.

Court of Claims.
Nov. 4, 1935.

H. H. Shelton, of Washington, D. C., for plaintiff.

J. H. Sheppard, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (John W. Light, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The principal question presented is the amount of profit realized by plaintiff in 1929 on sales of corporate stock, a part of which he acquired as original purchases and a part through the exercise of rights on the stock then held. Plaintiff realized a profit, but disagrees with defendant as to the amount, the difference being due largely to the method employed by the parties in arriving at the cost of the stock sold.

Prior to the issuance of any rights to subscribe to stock, plaintiff acquired three separate lots of stock of the American Cyanamid Company having a par value of $100 a share. The first 500 shares were acquired by gift in 1922, the cost to the donor being $35 a share; 1,700 shares were acquired in 1923 at $59 a share; and 654 shares were acquired in 1924 at $27 a share. In 1926 each share was divided into 1 class A share, par value $20, and 4 class B shares, par value $20. The A and B shares differed only in that the A shares carried voting rights while the B shares did not, the shares of the two classes having only a slight difference in value. Later in 1926 plaintiff sold 700 B shares, thus leaving his holdings at that time in the respective amounts of 2,854 and 10,716 A and B shares. July 16, 1928, the Cyanamid Company issued rights under which plaintiff became entitled to acquire, and on August 6, 1928, did acquire 6,785 shares of B stock at $20 a share. As a result of further rights issued by the corporation February 4, 1929, plaintiff acquired 10,177½ additional B shares at $20 a share. He then bought an additional ½ B share for $39. Thereupon plaintiff held 2,854 A shares and 27,679 B shares. March 21, 1929, he sold 2,600 B shares for $163,800. May 14, 1929, the Cyanamid Company issued rights entitling plaintiff to acquire 9,311 additional B shares. He did not, however, exercise all of these rights, but sold 3,753 for $37,213.13. He exercised the remaining rights June 17, 1929, and thus acquired 8,060 additional B shares at $20 a share. His total holdings at this time were 2,854 A shares and 33,139 B shares. Thereafter he sold B stock in the amounts of 5,200 shares July 12, 1929, for $332,482; 200 shares August 12, 1929, for $13,457; 500 shares September 11, 1929, for $33,-892.50; and on August 13, 1929, he gave 3,000 shares to his children. Plaintiff then held 2,854 shares of A stock and 24,239 shares of B stock. Except as to one block of stock not in controversy, the stock on hand and the stock disposed of in 1929 represented a commingled lot of stock which could not be identified as to date of purchase of any particular share.

In his return for 1929 plaintiff reported a profit on the sales mentioned above, but the defendant increased that profit, giving rise to a deficiency which was assessed and paid under protest. We understand the parties to agree that in the event the so-called "average-cost method" contended for by the plaintiff is approved by the court the plaintiff has correctly determined such cost in the profit returned by him; and that, on the other hand, if the method outlined in article 58 of regulations 74 reaches the proper result, that regulation has been correctly followed by the defendant. A method of computation is not important in itself, but the result reached must accord with the well-recognized principles that govern a particular issue. We think the correct cost is obtained in this case by the method employed by the defendant.

Plaintiff used the total cost of all stock on hand at the date of a given sale and divided that cost by the total number of shares on hand, arriving at a cost for a share of stock which he applied to all shares sold at that time in order to arrive at the total cost of the shares sold. Plaintiff undertakes to justify this course on the ground that the Treasury Regulations sanction and require that method and the consequent result where the stock sold comes from commingled holdings having as their antecedents stock purchased at different prices and some of the stock pur-

chased through the exercise of rights on stocks previously purchased. We think no distinction should be made in determining cost between stock purchased as the result of the exercise of rights and stock purchased at different times where no exercise of rights is involved, provided a proper allocation of cost to each purchase can be made. When this has been accomplished, there is presented the familiar case of a sale from an unidentified block of stock and the correct answer results in the application of the first in-first out rule. That in substance was what the defendant did in this case when it applied article 58 of regulations 74.[1]

1 "When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots cannot be determined, the stock sold shall be charged against the earliest purchases of such stock. The excess of the amount realized on the sale over the cost or other basis of the stock will constitute gain. In the case of stock in respect of which any stock dividend was paid, the basis for determining gain or loss from a sale of a share of such stock shall be ascertained in accordance with the principles laid down in article 600. Where common stock is received as a bonus with the purchase of preferred stock or bonds, the total purchase price shall be fairly apportioned between such common stock and the securities purchased for the purpose of determining the portion of the cost attributable to each class of stock or securities, but if that should be impracticable in any case, no profit on any subsequent sale of any part of the stock or securities will be realized until out of the proceeds of sales shall have been recovered the total cost.

"Where a corporation issues to its shareholders rights to subscribe to its stock. the value of the rights does not constitute taxable income to the shareholder. although gain may be derived or loss sustained by the shareholder from the sale of such rights. In this connection the following rules may be stated:

"(1) If the shareholder does not exercise, but sells his rights to subscribe, the cost or other basis of the stock in respect of which the rights are issued shall be apportioned between the rights and the stock in proportion to the respective values thereof at the time the rights are issued, and the basis for determining gain or loss from the sale of a right on one hand or a share of stock on the other will be the quotient of the cost or other basis assigned to the rights or the stock, divided, as the case may be, by the number of rights issued or by the number of shares held.

"Example: A taxpayer in 1927 purchased 500 shares of stock at $125 a share, and in 1928, by reason of the ownership of such stock, received 500 rights entitling him to subscribe to 100 additional shares at $100 a share. Upon the issuance of the rights each of the shares of stock in respect of which the rights were issued had a fair market value of $120, and the rights had a fair market value of $3 each. Instead of subscribing to the additional shares, A sold the rights at $4 each. The profit is computed as follows:

500 (shares) × $125=$62,500, cost of old stock (stock in respect of which the rights were issued).

500 (shares) × $120=$60,000, market value of old stock.

500 (rights) × $3 =$1,500. market value of rights.

$\frac{60,000}{61,500}$ of $62,500=$60.975.61, cost of old stock apportioned to such stock after issuance of rights.

$\frac{1,500}{61,500}$ of $62,500=$1,524.39, cost of old stock apportioned to rights.

$2,000 (proceeds of sale of rights) less $1,524.39 (cost of old stock apportioned to rights)=$475.61, profit.

"For the purpose of determining the gain or loss from the subsequent sale of the stock in respect of which the rights were issued, the adjusted cost of each share is $121.95—that is, $60,975.61÷500.

"(2) If the shareholder exercises his rights to subscribe, the basis for determining gain or loss from a subsequent sale of a share of the stock in respect of which the rights were issued shall be determined as in paragraph (1). The basis for determining gain or loss from a subsequent sale of a share of the stock obtained through exercising the rights shall be determined by dividing the part of the cost or other basis of the old shares assigned to the rights, plus the subscription price of the new shares, by the number of new shares obtained.

"Example: A taxpayer in 1927 purchased 500 shares of stock at $125 a share, and in 1928, by reason of the ownership of such stock received 500 rights entitling him to subscribe to 100 additional shares at $100 a share. Upon the issuance of the rights each of the shares of stock in respect of which the rights were

486

■ Applying that regulation to the case, we find the stock acquired in 1922 had a definite cost recognized throughout as the cost of that amount of stock, less whatever cost is carved therefrom and added to stock acquired through the exercise of rights. The same is true of the other acquisitions. No difficulty arises because of the division of the stock into classes A and B in 1926, for the reason that the old cost is allocated to the divided stock on the basis of whatever division is made. A new acquisition of stock occurs when rights are exercised, but inasmuch as the rights, as such, have a value, the entire cost of the new stock acquisition is not represented solely by the price at which the stock may be acquired by the owner of the rights; instead, the entire cost applicable to such new acquisition is the price paid at that time plus a part of the cost of the original stock on which the rights were issued. The proper method of determining that part of the cost of the original stock to be separated or carved therefrom and added to the price paid when the rights are exercised in order to arrive at the cost of the additional stock is provided in article 58 of regulations 74, supra. In a sale of a part of commingled stock (original stock plus that acquired through the exercise of rights) this regulation points out the way to determine the cost for the original stock and, also, the cost for the additional stock, and no difficulty arises in applying the first in-first out rule in order to arrive at the profit on the stock sold. A determination of profit in the foregoing manner and under similar conditions was approved in Todd v. Commissioner of Internal Revenue (C. C. A.) 72 F.(2d) 998.

■ In a case involving more than one purchase of stock prior to the issuance of rights, the same method is applicable to the end that original cost of each block is carried through less such part as is carved therefrom and allocated to rights to subscribe under which there are new acquisitions. In that manner there is always an identifiable cost with respect to all stock on hand, regardless of the number of purchases and whether acquired with or without the exercise of rights. The profit on any stock sold from a commingled lot is determined in a similar manner, namely, by applying the first in-first out rule, which is recognized as the rule to be applied where stock sold is unidentifiable as having been purchased at a particular time. Helvering v. Rankin, 295 U. S. 123, 55 S. Ct. 732, 79 L. Ed. 1343; Snyder v. Commissioner of Internal Revenue, 295 U. S. 134, 55 S. Ct. 737, 79 L. Ed. 1351.

Much of plaintiff's argument in support of his average method is predicated on the claim that the penultimate paragraph of article 58, regulations 74, supra, requires that method since it states that:

"If the stock in respect of which the rights are issued was purchased at different times and at different prices and the

issued had a fair market value of $120, and the rights had a fair market value of $3 each. The taxpayer exercised his rights to subscribe to the additional shares and later sold one of such shares for $140. The profit is computed as follows:

" $1,524.39 (cost of old stock apportioned to rights pursuant to the computation in the example under paragraph (1) ) plus $10,000 (subscription price of additional shares) = $11,524.39, basis for determining gain or loss from sale of additional shares.

"$11,524.39÷100=$115.24, basis for determining gain or loss from sale of each share of additional stock.

" $140 (proceeds of sale of share of additional stock) less $115.24=$24.76, profit.

"The basis for determining the gain or loss from subsequent sale of the stock in respect of which the rights were issued is $60,975.61÷500, or $121.95 a share.

"If the stock in respect of which the rights are issued was purchased at dif-

ferent times and at different prices and the identity of the lots cannot be determined, or if the stock in respect of which the rights are issued was purchased at different times and at different prices and the stock rights issued in respect of such stock cannot be identified as having been issued in respect of any particular lot of such stock, the basis for determining the gain or loss from the sale of the old shares or the rights in cases where the rights are sold or from the sale of the old or new shares in cases where the rights are exercised, shall be ascertained in accordance with the principles laid down in article 600.

"The taxpayer may at his option include the entire proceeds from the sale of stock rights in gross income, in which case the basis for determining gain or loss from the subsequent sale of the stock in respect of which the rights were issued shall be the same as though the rights had not been issued."

identity of the lots cannot be determined, or if the stock in respect of which the rights are issued was purchased at different times and at different prices and the stock rights issued in respect of such stock cannot be identified as having been issued in respect of any particular lot of such stock, the basis for determining the gain or loss from the sale of the old shares or the rights in cases where the rights are sold or from the sale of the old or new shares in cases where the rights are exercised, shall be ascertained in accordance with the principles laid down in article 600."

As will appear from an examination of article 600,[2] referred to in the above quotation, provision is made therein under rules (1) and (2) for the use of an average method of determining cost under certain circumstances of distribution in connection with a reorganization and under rules (3) and (4) for the use of the first in-first out rule in connection with a determination of what stock was sold in a given sale from stock received in a distribution under a reorganization. Defendant's answer to plaintiff's contention is that article 600 can have no application here for the reason that no reorganization is involved. That, however, is not a suffi-

cient answer, since no such limitation is placed thereon in article 58 and the general language used, if taken literally, would give some support at least to the argument advanced by plaintiff. However, we are of opinion that at most article 58 intended to go no further than to authorize the average method of determining cost as set forth in article 600 only in cases involving reorganization, and in those cases not involving reorganization where an identifiable cost of the stock sold can not be determined in accordance with the rules specified in article 58. As thus interpreted, article 600 is not applicable here since proper cost has been determined under the rules provided in article 58, and this article clearly did not intend to provide optional methods.

Plaintiff seeks to apply the part of article 600 which provides for an average cost, but makes no application of the first in-first out rule in the same article since all stock on hand at a given time is considered as having the same cost and therefore it is immaterial, except for capital gain purposes, what acquisition date is applied to the stock sold. On the other hand, the method employed by the defendant affords a reasonable basis for allocating an identifiable cost to all stock on hand, and

---

[2] "Art. 600. Stock or securities distributed in reorganization.—In the case of stock or securities acquired by a shareholder after December 31, 1923, in connection with a transaction described in section 112 (g) and article 576, the basis in the case of the stock in respect of which distribution was made shall be apportioned between such stock and the stock or securities distributed to the shareholder. The basis for the old and new shares shall be determined in accordance with the following rules:

"(1) Where the stock distributed in reorganization is all of substantially the same character or preference as the stock in respect of which the distribution is made, the basis of each share will be the quotient of the cost or other basis of the old shares of stock divided by the total number of old and new shares.

"(2) Where the stock distributed in reorganization is in whole or in part of a character or preference materially different from the stock in respect of which the distribution is made, the cost or other basis of the old shares of stock shall be divided between such old stock and the new stock in proportion, as nearly as may be, to the respective values of each class of stock, old and new, at the time the new shares of stock are distributed, and the basis of each share of stock will be the quotient of the cost or other basis of the class with which such share belongs, divided by the number of shares in the class.

"(3) Where the stock in respect of which a distribution in reorganization is made was purchased at different times and at different prices, and the identity of the lots cannot be determined, any sale of the original stock will be charged to the earliest purchases of such stock (see article 58), and any sale of the stock distributed in reorganization will be presumed to have been made from the stock distributed in respect of the earliest purchased stock.

"(4) Where the stock in respect of which a distribution in reorganization is made was purchased at different times and at different prices, and the stock distributed in reorganization cannot be identified as having been distributed in respect of any particular lot of such stock, then any sale of the stock distributed in reorganization will be presumed to have been made from the stock distributed in respect of the earliest purchased stock."

thus makes possible not only a computation of ordinary gain on a first in-first out basis but also a rational basis on which capital gain may be computed.

Plaintiff further suggests that the defendant's method violates the principles announced in Miles v. Safe Deposit & Trust Co., 259 U. 'S. 247, 42 S. Ct. 483, 66 L. Ed. 923, which, he contends, requires the use of the average method when stock is acquired through the exercise of rights. We cannot agree with the taxpayer's contention. In that case the taxpayer contended that the entire proceeds from the sale of rights was a return of capital and therefore not taxable, whereas the government contended that the entire proceeds constituted taxable income. The Supreme Court sustained the decision of the District Court, 273 F. 822, that only a part of the proceeds constituted taxable income and, in so doing, examined and approved the method employed as leading to a correct result in that case. Although the method followed in that case was an average method, we do not interpret the opinion as suggesting or approving the average method as of universal application.

Shortly after the decision in the Miles v. Safe Deposit & Trust Company Case, supra, the Commissioner amended article 39 of regulations 45 and 62 to conform thereto. Thereafter administrative difficulties arose in the application of that article in that absurd results were often reached, and the Commissioner found it necessary to supplant that article with a new article 39, regulations 69, under the Revenue Act of 1926, and that article has been repeated in subsequent regulations, being article 58 of regulations 74, in controversy here. The inequitable result under the old regulations was manifest in the case of Edward Stephens Harkness v. Commissioner, 21 B. T. A. 1068, in which the Commissioner had applied the old regulation and was refusing to give the new regulations (art. 39, regulations 69, and article 58, regulations 74) a retroactive effect. The Board of Tax Appeals, in disapproving the old regulations and accepting the new regulations, said:

"This decision of the Supreme Court does not prescribe in detail the method of computing gain from the sale of stock rights, but the decision did affirm the decision of the District Court. The method used by the District Court in that case arrived at a satisfactory result for that case, but a proper result in the present case cannot be reached by applying the method used by the District Court in the Miles Case. The respondent, by blindly adhering to a formula, has computed a profit in each of these cases in excess of the actual sale price of the rights. Such a result is manifestly wrong and in conflict with the decision of the Supreme Court above referred to. The deficiency determined by using, as a profit from the sale of these rights, the entire amount of the purchase price is in error. That which is not income is taxed as if it were."

The instant case presents a situation similar to the Harkness Case, so far as individual stock rights are concerned, and similar results would follow with respect thereto if the old regulations were applied. Most, if not all, of the cases cited and relied upon by plaintiff arose under the old regulations. In our opinion the new regulation, art. 58 of regulations 74, affords a convenient, practical, and fair basis for allocating and determining cost of stock acquired through the exercise of rights as in the case before us and does no violence to the principles announced in Miles v. Safe Deposit & Trust Co., supra. The principles outlined in that case have been carefully observed as a basis for the rules adopted by the Treasury Department in article 58, regulations 74. No better formula has been suggested and we are satisfied it reaches the correct result in this and similar cases.

In view of our decision on the foregoing issue, it is unnecessary to discuss the question whether all of the profits realized are taxable as capital gains. The petition must be dismissed. It is so ordered.