## ARROTT v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8230.

Circuit Court of Appeals, Third Circuit.

Argued March 1, 1943.

Decided June 9, 1943.

Drayton Heard, of Pittsburgh, Pa., for petitioner.

N. Barr Miller, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Carolyn E. Agger, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before MARIS and GOODRICH, Circuit Judges, and GANEY, District Judge.

GOODRICH, Circuit Judge.

The taxpayer was at one time the owner of four blocks of stock of a corporation known as Standard Sanitary Manufacturing Company, hereafter called Standard. She acquired them on four different occasions. The first came to her under the intestate laws of Pennsylvania from the estate of her husband in 1909 as to which value is fixed, of course, as of March 1, 1913. The second came under the intestate laws of Pennsylvania from the estate of her son who died in 1917. The third and fourth acquisitions were through purchases in open market in 1924 and 1926 respectively. The cost basis of each block of this stock was different from that of any other.

During the period of taxpayer's ownership of these Standard shares there were certain stock dividends, split-ups and exchanges none of which raised questions in this litigation. The total holdings in 1929 were 27,900 shares of Standard; the total cost of acquisition, $117,951.01.

In 1929, upon a non-taxable reorganization, the taxpayer surrendered all her Standard shares and received in exchange therefor 30,423 shares of American Radiator & Standard Sanitary Corporation (hereafter called Radiator) common stock. This was a non-taxable exchange under the Revenue Act of 1928, 26 U.S.C.A. Int. Rev.Acts, page 351 et seq.[1]

From 1931 to 1936 inclusive, the taxpayer sold some of her Radiator shares in the open market. In 1938 she sold 5,500 shares. It is the cost basis of the latter shares which is the subject of this litigation. The Commissioner says it is to be computed by an equal allocation of the cost of all the Radiator shares.[2] Petitioner wants a basis allocated to the cost of her two market purchases of 1924 and 1926, plus so much of the cost of her 1917 inheritance from her son as may be required to fill out the number of Radiator shares sold in 1938. If average cost is to be used, she says, then the straight average cost should be adjusted in such manner as to take into account the earlier sales, as shown in the Commissioner's original notice of deficiency.[3]

■ We shall first discuss briefly the application of the average cost rule. When a shareholder buys, at different times and at different prices, shares in the same corporation, his $80 share is just as great an interest in the corporate enterprise as the one for which he pays $110. But if he sells each at $120 it is too clear to be talked about that his profit is $30 greater on the low cost purchase than the high cost acquisition. If he sells only part of his shares and can identify what he sold as the block purchased at any particular price, then he pays his tax upon the gain from that transaction. Many cases turn upon the sufficiency of such identification. For examples, see Curtis v. Helvering, 2 Cir., 1939, 101 F.2d 40; Fuller v. Commissioner of Internal Revenue, 1 Cir., 1936, 81 F.2d 176; Rule v. Commissioner of Internal Revenue, 10 Cir., 1942, 127 F.2d 979. If no identification is established, the first in-first out rule provides a working basis for the imposition of a tax upon the profits of a particular transaction and insures the shareholder that if he keeps on selling he will eventually have all of his capital allowed. Though it seems to be a favorite rule of the Commissioner there is little else to commend it. The taxpayer's preference would undoubtedly be for the most expensive purchase as the one to be used as the basis of calculating the tax on an individual sale. We think the average cost of all the shares is the fairest of the three.

■ At any rate the courts have refused to follow the Commissioner's first in-first out rule when the taxpayer had exchanged the various blocks of stock in one corporation for the shares of another in a tax free reorganization. In those instances the average cost rule finds such firm support both from the Tax Court and the various Circuits that it will take a Supreme Court decision or an act of Congress to change it. Commissioner of Internal Revenue v. Von Gunten, 6 Cir., 1935, 76 F.2d 670; Helvering v. Stifel, 4 Cir., 1935, 75 F.2d 583; Commissioner of Internal Revenue v. Oliver, 3 Cir., 1935, 78 F.2d 561; Commissioner of Internal Revenue v. Bolender, 7 Cir., 1936, 82 F.2d 591; Fleischmann v. Commissioner of Internal Revenue, 1939, 40 B.T.A. 672. That this result was established against the contentions of the Com-

---

[1] Subsequently the taxpayer received rights with respect to the Radiator shares. These she sold. This transaction does not raise any issue between the parties here.

[2] Thus he would take the total cost at acquisition of all the Standard shares ($117,951.01) as the cost of the Radiator shares received upon the reorganization, less an allowance for the cost allocated to the rights sold ($5,537.80) and divide this sum ($112,413.21) by the number of Radiator shares (30,423) to arrive at the cost basis of a single Radiator share ($3.695).

[3] In his original notice of deficiency, the Commissioner, in arriving at the average cost, made allowance for the shares sold prior to 1938, using as a cost basis therefor the cost basis which had been used in determining gains on those sales, arrived at by applying the first in-first out rule. At the hearing the Commissioner increased the deficiency on the ground that the cost of the 5500 Radiator shares sold in 1938 should be computed by an equal allocation of the total cost of all Radiator shares, without leaving the shares sold before 1938 out of consideration.

missioner does not of course preclude him from using it in his favor in subsequent litigation, even though it gives the taxpayer a chance to make faces at the tax collecting authorities.

■ ' We think it is the only sound rule. The old shares all have the same exchange value for the new ones no matter what they cost the taxpayer. He gets as much new stock for the share for which he paid $80 as he does for the share for which he paid $120. The old shares lose their identity when traded for the new, just as the money with which one buys a war bond loses its identity in the certificate, though to the purchaser some of it may have been a gift, some won on a horse race and the remainder earned by the sweat of his brow. The old shares are gone; the new shares in what is at least nominally a new company take their place. Each new share costs the taxpayer the quotient of the sum of the cost of the old shares divided by the number of new shares he receives.

If this is correct, the question of identification drops out of the operative facts in determining the value of shares received in a tax free reorganization. If it be thought to go too far, and identification of new shares received for specified old ones is legally relevant, it will not help the taxpayer here for there is no identification. It was not possible to match any particular certificate evidencing the 5,500 shares of Radiator sold in 1938 with any certificate the taxpayer had held in Standard. The taxpayer concedes this. The sale of the shares was arranged through her son, who was conversant with her affairs, and who was connected with the brokerage house which made the sale on the taxpayer's account. There is a finding that "The petitioner wished to diversify her holdings, but to pay as little tax as possible. Her son told her to leave that to her attorney." We do not know the source of the particular Standard shares which procured the certificates for Radiator shares. 5,500 of

the latter were sold in 1938; the taxpayer's lawyer drew up her tax return, naturally enough, in a way which would make the most favorable tax showing for his client. But in it all we see no evidence of identification but only the very human desire of every taxpayer not to incur more tax liability than he must.

■ Finally, the taxpayer contends that the Commissioner's failure to make adjustments for the cost already allocated, by applying the first in-first out rule, to the shares sold prior to 1938 results in a tax upon capital. The Commissioner's first answer to this is that the 1938 tax cannot be such because the taxpayer by that time had not exhausted her cost basis. That point seems to us well taken so far as this tax is concerned. The taxpayer points out that she gets no relief from the mitigation section, § 820(f) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts page 1161, for it does not permit adjustment for years prior to January 1, 1932, and taxpayer paid, as part of her income tax for 1931, the tax upon the profits from the sale of Radiator stock in that year.[4] Should she, in her lifetime, sell all her shares of Radiator a portion of her cost base upon which the previous tax had been assessed would not be allowed for, and therefore a portion of the tax collected would be on capital, not income.[5] This attack on the constitutionality of the Commissioner's assessment must fail. It may be conceded that the cost basis used prior to 1938 was erroneous and when no allowance therefor is made in 1938 and later years, petitioner will in effect not recover, free of tax, her entire capital investment. However, the petitioner, then, as now, could have litigated the matter to arrive at a correct determination. For some of the years in question, she may still be able to do so. The fact that she has waited past the limitation period for a given year, however, does not allow her to compel a correction now. As Mr. Justice Stone in Burnet v. Sanford & Brooks Co., 1931, 282 U.S. 359, 51 S.Ct.

4 Of the 7,572 shares of Radiator sold prior to 1938, 2000 were sold in 1931, and the remainder in subsequent years.

5 The cost basis allocated originally to the 7,572 shares sold prior to 1938 was $23,171.00. The adjusted cost basis of one share arrived at by the Commissioner in his last determination was $3.695 per share. The cost basis for 22,851 shares, (the total number of shares minus the 7,572 sold) would be $84,444.45. If these two bases are totaled, the sum is $107,-615.45, representing the total cost, whereas, the actual cost was $112,413.21. The taxpayer contends that if all the shares are sold ultimately, the Commissioner will, under his present formula, use $107,615.45 as the cost basis, and thus eventually impose a tax on the difference between $112,413.21 and $107,-615.45, which would make it a tax on capital.

150, 75 L.Ed. 383, points out, the purpose of the income tax law is to raise money, and it is practically necessary that it be on an annual or other fixed period basis, for only by such a system could a regular flow of income be assured.[6]

The decision of the Board of Tax Appeals is affirmed.

---

[6] "* * * although some inequities, * * * are bound to occur, if each year's flow of income is measured and taxed irrespective of the flow in neighboring years, administrative convenience and fiscal necessities are greatly served thereby." Magill, Taxable Income (1936) p. 221.