BIG WOLF CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 111852. Promulgated September 27, 1943.

*Richard W. Wilson, Esq.*, for the petitioner.
*B. W. Berg, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge*: The basic question in this case is whether, in determining if petitioner realized capital gain on the receipt in 1938 of partial liquidating dividends, respondent was justified in considering the new shares of Santa Clara as identifiable with the old shares of that company. In his computation respondent first set out the original cost or other bases to Meigs of eleven blocks of old shares. He then assumed that the several distributions were allocable to the several blocks of old stock so represented by the eleven original certificates. From the cost of each such block he deducted an allocated or proportionate part of the several distributions, thereby determining as to the first two blocks, i. e., 1,437.8 shares and 306.8 shares, that there remained unrecovered of the basis the amounts of $178,314.53 and $36,903.67, respectively, and as to the other seven blocks that there was an aggregate profit in 1938 of $25,762.57, on which there was a taxable capital gain of $18,097.57. Respondent relies on section 113 (a) (8) (B) of the Revenue Act of 1938.

The petitioner contends that after the recapitalization in 1916 identification was impossible, and argues that the sometimes called "average cost rule" should be applied, citing *Arrott* v. *Commissioner*, 136 Fed. (2) 449. Under the latter method of calculation all shares held by the petitioner would have identical cost base determined

by dividing the total cost of petitioner's shares ($589,774.77) by the total number thereof (2,062).

It is stipulated that in 1916 Meigs surrendered 2,595 old shares, evidenced by eleven certificates, and received in lieu thereof 2.076 new shares, evidenced by four certificates. On its face this indiscriminate commingling of shares and the difference in the number of certificates exchanged suggest the impossibility of identification of any one old share or certificate with any one new share or certificate. We recognize that certificates are not the only means of identification, but none other is here suggested or relied on. In fact, while respondent concedes the issue to be whether an allocation predicated on identification can be made, it can not be said that on brief he contends that identification is established as a fact or is really possible. He points to the allocation and computation made by the revenue agent, and in effect submits the case on that treatment.

Since there was no sale of the shares, no application of the "first in, first out" rule, often urged by the respondent and, in the appropriate cases, approved by the courts, was possible. It will be at once recognized that this case also differs in its facts from *Christian W. Von Gunten*, 28 B. T. A. 702; affd., 76 Fed. (2d) 670; *Arrott* v. *Commissioner*, *supra*, and other similar cases, in that in this case petitioner underwent a mere recapitalization without the intervention of a second company. In those cases there were reorganizations involving the stock of a second company. There is nevertheless a parallelism between the principle governing those cases and that which we feel should be applied here. On the facts here stipulated it is obvious that there was no real identification of the new shares with the old shares. Any attempt to establish identification would of necessity be arbitrary. The fact that the Commissioner has made an allocation of cost does not establish the fact of identification. It merely furnished a starting point for the instant case. The prima facie presumption which is accorded to the Commissioner's findings is overcome by the stipulated facts as to what was done.

In considering this problem we are much impressed by the opinion of Judge Goodrich in *Arrott* v. *Commissioner*, *supra*, wherein it is observed that:

* * * the courts have refused to follow the Commissioner's first in-first out rule when the taxpayer had exchanged the various blocks of stock in one corporation for the shares of another in a tax free reorganization. In those instances the average cost rule finds such firm support both from the Tax Court and the various Circuits that it will take a Supreme Court decision or an act of Congress to change it. [Citing *Commissioner* v. *Von Gunten*, *supra*, and other cases.] That this result was established against the contentions of the Commissioner does not of course preclude him from using it in his favor in subsequent litigation, even though it gives the taxpayer a chance to make faces at the tax collecting authorities.

We think it is the only sound rule. The old shares all have the same exchange value for the new ones no matter what they cost the taxpayer. He gets as much new stock for the share for which he paid $80 as he does for the share for which he paid $120. The old shares lose their identity when traded for the new, just as the money with which one buys a war bond loses its identity in the certificate, though to the purchaser some of it may have been a gift, some won on a horse race and the remainder earned by the sweat of his brow. The old shares are gone: the new shares in what is at least nominally a new company take their place. Each new share costs the taxpayer the quotient of the sum of the cost of the old shares divided by the number of new shares he receives.

If this is correct, the question of identification drops out of the operative facts in determining the value of shares received in a tax free reorganization. If it be thought to go too far, and identification of new shares received for specified old ones is legally relevant, it will not help the taxpayer here for there is no identification. It was not possible to match any particular certificate evidencing the 5,500 shares of Radiator sold in 1938 with any certificate the taxpayer had held in Standard. The taxpayer concedes this. * * *

So it is here. The old shares lost their identity when traded for the new shares. The aggregate cost of the eleven blocks of old shares persists and carries over as the basis for the new shares, but on the present facts there is no means of matching the cost of the eleven separate original blocks or certificates with the four new blocks of shares or certificates. In this posture of the facts it would seem that the only sound rule is the one proposed by the petitioner, the averaging of the cost of the shares and the pro rata application of the distributions.

It is stated by the petitioner's counsel, though not conceded by the respondent, that a decision to the above effect will result in no gain to the petitioner at this time, and consequently no deficiency or penalty. The Rule 50 computation will determine this matter. It should be observed that if there is a deficiency on recomputation, the penalty will attach. No proof was introduced on that issue.

Petitioner's counsel based his third alleged error on the false assumption that a deficiency in income tax was determined by respondent in the notice of deficiency. No such determination was made. Consequently, we have no jurisdiction as to the alleged overpayment of income tax. *Citizens Mutual Investment Association*, 46 B. T. A. 48.

Reviewed by the Court.

*Decision will be entered under Rule 50.*