## BLOCH v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10697.

Circuit Court of Appeals, Ninth Circuit.

March 14, 1945.

W. H. Orrick and Charles L. Barnard, both of San Francisco, Cal. (Orrick, Dahlquist, Neff, Brown & Herrington, of San Francisco, Cal., of counsel), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, Helen Goodner, and Harold Wilkenfeld, Sp. Assts. to the Atty. Gen., for respondent.

Before MATHEWS, STEPHENS, and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

We are considering a petition of an income tax taxpayer for the review of the Tax Court's decision upholding the method of the Commissioner of Internal Revenue in arriving at gain or loss upon a sale of corporate stock.

The judge of the Tax Court presiding at the hearing states the case so admirably in a memorandum opinion that we repeat it here. We do not, however, agree with his reasoning or with the Tax Court's decision. The statement includes facts relevant to a review pending as to Louis Bloch, husband of petitioner, and it is stipulated that the determination of the review of Amelia Davis Bloch shall control the decision as to the review of Louis Bloch. Quotation marks are not used for the reason that we have deleted parts of the statement which are not relevant to the issues raised in Amelia Davis Bloch's case.

Judge Smith: These proceedings are for the redetermination of income tax deficiencies for the calendar year 1940. The issue presented is whether the respondent erred in determining the basis of certain shares of stock of the Dow Chemical Co. sold by the petitioner during the taxable year by averaging the cost of shares of Great Western Electro-Chemical Co. which were exchanged by petitioners therefor in a nontaxable reorganization [merger of one corporation into another existing corporation].

All of the facts have been stipulated.

In 1940 the petitioner Amelia Davis Bloch sold 212 shares of Dow Chemical Co. for a total selling price of $33,264.24. The certificates evidencing the shares sold were received by the petitioner in 1939 under a statutory merger of Great Western, a California corporation, and Dow, a Michigan corporation. The shares of Dow sold by the petitioner in 1940 are traceable through stock certificate numbers to specific shares of Great Western which

were turned in in exchange. The cost to petitioner of the 212 shares of such stock sold by petitioner Amelia Davis Bloch was $13,900.17. She used such cost basis in determining the capital gains attributable to the sales made by her.

In his determination of the deficiency the respondent, Commissioner, has held that the petitioner may not use such cost basis but must in lieu thereof use the cost of each Dow share determined by dividing the total cost of the Great Western shares acquired at different times and different prices by the total number of Dow shares received and then multiplying that amount by the number of Dow shares sold.

The only question presented for decision relates to the basis. No contention is made that the petitioners' bases used are not correct provided they may trace the Dow shares sold by specific certificate numbers to the Great Western shares purchased.

There is no question but that the Dow shares were received by the petitioners in 1939 upon a reorganization under section 112(g) (1) I.R.C., 26 U.S.C.A.Int.Rev.Code § 112(g) (1). Neither is there any question but that the following portion of section 113 I.R.C., 26 U.S.C.A.Int.Rev.Code § 113, is applicable in the determination of the basis of the shares:

Sec. 113. Adjusted basis for determining gain or loss—

(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that— * * *

(6) Tax-free exchanges generally.—If the property was acquired, after February 28, 1913, upon an exchange described in section 112(b) to (e), inclusive, the basis (except as provided in paragraphs (15), (17), or (18) of this subsection) shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made. * * * "

The respondent contends that no identification of the shares of Dow stock received in exchange for Great Western shares is permissible [1] and that the basis of the Dow shares should be computed by dividing the total cost of the Great Western shares by the total number of Dow shares received. In support of such proposition the respondent cites Commissioner of Internal Revenue v. Bolender, 7 Cir., 1936, 82 F.2d 591; Commissioner of Internal Revenue v. Oliver, 3 Cir., 1935, 78 F.2d 561; Helvering v. Stifel, 4 Cir., 1935, 75 F.2d 583, and Commissioner of Internal Revenue v. Von Gunten, 6 Cir., 1935, 76 F.2d 670. Respondent submits that in those cases:

* * * the courts rejected the "first in first out" rule which the Commissioner had contended was applicable in the absence of identification. But under the rationale of those cases it is clear that attempts to establish the cost basis of the shares received by identification would be equally futile. Identification is permissible only when there is identity between the shares of stock sought to be identified. * * *

Judge Smith goes on to say in his memorandum that "under the rule identification of the shares of a reorganized corporation with those of another corporation is immaterial," and cites and quotes from Arrott v. Commissioner of Internal Revenue, 3 Cir., 1943, 136 F.2d 449, and Raoul H. Fleischmann, 40 B.T.A. 672, 688.

As has been seen, it is stated in the memorandum opinion that: "The shares of Dow sold by the petitioners in 1940 are traceable through stock certificate numbers to specific shares of Great Western which were turned in in exchange." Respondent disputes the accuracy of this statement upon two counts. He firstly contends that the complete matching of certificates is impossible and secondly that even if they can be matched this fact does not, of itself, establish identity of a share in the absorbing corporation with a share in the absorbed corporation. The following shows that the certificates can be matched.

Upon the conversion of the certificates evidencing Great Western stock into certificates evidencing Dow stock, seven Great Western certificates were surrendered each evidencing various numbers of shares for six Dow certificates each evidencing vari-

---

[1] It would appear from this statement that respondent conceded upon the hearing before the Tax Court that the shares sold can be identified with shares purchased. In this review respondent contends that no identification is possible under the evidence.

ous numbers of shares. The total number of Dow shares received was 412.

The following is the eleventh paragraph of the Stipulation of Facts:

"In March, 1940, Taxpayer sold 212 Common Shares of Dow for a total selling price of $33,264.24, 100 of which said 212 shares were represented by said Dow Certificate C5822 and 62 of which said 212 shares were represented by Dow Certificate C018244 and 50 of which said 212 shares were represented by Dow Certificate C018245."

The following is from paragraph X of the Stipulation of Facts:

"The Cleveland Trust Company [agent for handling the stock exchange under the statutory merger] cancelled said certificates so forwarded by Taxpayer and issued to Taxpayer the following numbered certificates of Dow, respectively *in lieu of* the following numbered certificates of Great Western so forwarded by Taxpayer [emphasis added]:

as stated in the Stipulation), does not produce identity of share exchange or succession. They would hold that in a merger of corporations wherein 100 shares of the absorbing corporation evidenced by one certificate are received by a stockholder of the absorbed corporation upon his surrender of one certificate for 100 shares of the absorbed corporation, there is no matching or trading of share for share. They would claim that a certain single share of the one corporation must be identified with some other certain single share of the other before there is identity. Thus they argue no identity has been shown, and therefore some theory of convenience must be invented and applied which confessedly only produces an approximately correct answer.

■ The Commissioner of Internal Revenue has propounded a rule that in instances of reorganization of a single corporation where identity of stock exchanged is not shown, the rule of first

| Dow Certificates Issued | Dow Common Shares Represented Thereby | Great Western Certificates Cancelled |
|---|---|---|
| C5822 | 100 shares) | (P392–398 |
| C18244 | 62 shares). | (PL145 |
| CLF171 | 3/16ths) | (PL414 |
| C5823 | 100 shares | 274 |
| C5824 | 100 shares | 274 |
| C018245 | 50 shares) | (L261 |
| | ) | (L1178" |

The date of the acquisition of each one of the Great Western certificates and the cost of the shares in each separate certificate is but a matter of simple arithmetic from the stipulated facts. Thus, there appears to be a perfect alignment or matching of certificates, and the exact cost of each certificate (bundle) of shares and the date of their purchase is again but an arithmetical problem. This conclusion is in accord with the Tax Court's memorandum opinion.

Contrariwise, it is the view of the Commissioner and the Tax Court, though it has not always been the view of either, that the studied matching of certificates (the issuing of one *in lieu of* the other

in first out [2] shall be followed. It is quite apparent that this is a rule of convenience, and its use can only be justified through necessity, i. e. the purchase price of the shares sold cannot be ascertained. At this point it will be well to realize that the fact sought is not the identity of stock sold but the cost of the stock sold. The Commissioner and the courts generally in the matter of corporate reorganization look to the realities and do not insist upon a showing that any single identified share has been exchanged for any other single identified share. Kraus v. Commissioner of Internal Revenue, 2 Cir., 1937, 88 F.2d 616; Fuller v. Commissioner of Internal Revenue, 1 Cir., 1936, 81 F.2d

---

[2] "If shares of stock in a corporation are sold from lots purchased at different dates or at different prices and the identity of the lots cannot be determined, the stock sold shall be charged against the earliest purchases of such stock." Article 4, paragraph 60, of Treasury Regulations 33 (Revised).

176. For contra see Crespi v. Commissioner of Internal Revenue, 5 Cir., 1942, 126 F.2d 699. It is the rationale of these cases that if one group of shares with its cost known, is traceable into another group of shares, and the latter group is sold, the cost of the former group will be taken as the cost of the latter group. No closer identity is required, and, of course, the result is exactly and not merely approximately correct.

The Tax Court, however (and some United States District Courts and Circuit Courts of Appeals as well) has refused to apply this definite method of arriving at cost of stock sold. The Tax Court has recently held in Fleischmann v. Commissioner of Internal Revenue, 40 B.T.A. 672, 688: " * * * It is now well established that where stock of one corporation is exchanged for stock of another, in pursuance of a plan of reorganization, the basis of the shares surrendered (after adjustment for any recognized gain or loss) must be allocated equally to the shares acquired, and the cost of some particular lot of the old shares may not be allocated to some particular lot of the new shares. * * *," plainly applying the language found in Arrott v. Commissioner of Internal Revenue, 3 Cir., 1943, 136 F.2d 449, 452, as follows: "We think it is the only sound rule. The old shares all have the same exchange value for the new ones no matter what they cost the taxpayer. He gets as much new stock for the share for which he paid $80 as he does for the share for which he paid $120. The old shares lose their identity when traded for the new, just as the money with which one buys a war bond loses its identity in the certificate, though to the purchaser some of it may have been a gift, some won on a horse race and the remainder earned by the sweat of his brow. The old shares are gone; the new shares in what is at least nominally a new company take their place. Each new share costs the taxpayer the quotient of the sum of the cost of the old shares divided by the number of new shares he receives."

This last statement imports into the transaction of reorganization or merger an important element which does not belong there. The owner of stock in surrendering his stock for new stock through a reorganization or merger is not a purchaser. He may be and often is opposed to the transformation but must make the best of it by going along or accepting a present valuation of his stock.[3]

The Commissioner, scenting the point, argues that since the owner has the choice of two courses, whichever course he chooses becomes his own voluntary act.

We would not concede that this conclusion would help his case even if it were a correct one, but the conclusion does not follow. The owner of a span of horses is told that he may swap them for certain others, but if he is not in a trading mind, he nevertheless must part with his horses. He may, if he likes, have their market value in cash. We think the owner does not part with his horses voluntarily no matter which alternative he chooses.

The Arrott case, last above quoted from, is not an ordinary case of refinancing of a single corporation but a merger of two corporations wherein one is absorbed by the other. It would appear that the Tax Court could see no more reason in applying the strict matching of share for share in a corporate reorganization than in a merger of corporations, and in the Fleischmann case it went the whole way. We are in entire agreement with the Tax Court that the application of the average cost rule is as sound in the one case as it is in the other case, but we think it is not sound at all. The Commissioner in his brief cites a number of authorities as to which we make brief comment.

Commissioner of Internal Revenue v. Von Gunten, 6 Cir., 1935, 76 F.2d 670. This case is critical of the first in first out rule and adopts the average cost rule. Unlike the instant case it was necessary to adopt a rule of convenience because identification as to the stock sold with the

---

[3] The respondent's view appears in his brief as follows: "But in any event, taxpayer erroneously asserts that the exchange was involuntary in her case. The right was preserved to her by the agreement of merger and by law (Sec. 369, Civil Code of California (1941) ) to demand and receive the fair market value of her Great Western stock if she did not approve of the merger. Thus she had an option to participate in the reorganization or to receive the value of her stock, and her election to become a shareholder in the new company precludes the exchange from being an involuntary one."

stock originally purchased could not be traced. Commissioner of Internal Revenue v. Oliver, 3 Cir., 78 F.2d 561; Helvering v. Stifel, 4 Cir., 1935, 75 F.2d 583. Again, in these cases no identification of stock sold can be traced to stock surrendered together with the cost of the original stock. In the circumstances the court preferred the average cost rule. Commissioner of Internal Revenue v. Bolender, 7 Cir., 1936, 82 F.2d 591. It is stated by the court in this case that "No part of the new shares can be identified as having been issued for any particular lot of the old shares." The court goes on to say that the doctrine of ascertaining gain or loss in a stock sale through identity of shares applies only to reorganizations of one corporation. It is apparent that the court having found identity impossible need not have gone on to express its opinion as to a limitation of the identity method of ascertaining cost.

It seems to us that the reasoning in Arrott v. Commissioner of Internal Revenue, supra, is erroneous and derives from a tangent of reasoning which the author of that opinion mistakes for the main stem. So far as the affairs of the absorbing corporation are concerned, it may be quite right to hold, if any such issue were before us, that all of the stock put together which is possessed by a stockholder of the absorbed corporation is surrendered for the proper amount of stock in the absorbing corporation. No doubt the books of the surviving corporation would show the exchange as all stock issued for all stock surrendered. But the incident of the absorbing reorganization in its effect upon the corporation has nothing directly to do with the problem here. It is the exact gain or loss where it is ascertainable on an investment in stock that the law says must be the basis for his tax. If the stock owner keeps his account through any number of stock movements so that when he sells certain shares he can trace their transmigrations either singly or in certificates evidencing a plural number of shares to the investment in them, we can see no reason why this should not be done.

A business man keeps his books of investments with tax problems in mind. A reorganization of the corporation in which he has stock or a consolidation of such

corporation with another corporation are possibilities he is bound to know may happen. He sees it every day in the corporate world in which he lives. He has made units of investment, and he preserves their identity through any and all of these changes. It would be a strange paradox in the law if it should say to him, yes, you pay upon your gain when you sell stock but your actual gain on the stock sold has no materiality.[4]

The decision of the Tax Court is reversed, and the case is remanded with instructions to proceed to its decision by arriving at the gain or loss of the stock sold as herein indicated.

Reversed and remanded.

---

[4] See statement in Tax Court memorandum—"Under the rule identification of the shares of a reorganized corporation with those of another corporation is immaterial."