OPINION. RauM, Judge: On the settlement date, July 24,1944, the partnership satisfied its “when issued” sales contracts in part by “when issued” purchase contracts and in part by the actual delivery of securities in the reorganized corporation which it had obtained in exchange for bonds of old corporation that it had previously purchased at various times and at various prices. Were it not for the capital gains and loss provisions, it would be a simple matter to determine the tax consequences of these transactions: it would be sufficient merely to subtract the cost of the various “when issued” purchase contracts and the cost of all of the bonds from the total amount realized on the “when issued” sales contracts in order to arrive at the net gain or loss. However, by reason of the capital gains and loss provisions, it becomes necessary to determine how much was received for securities held more than six months and how much was received for the securities held for six months or less. There is no question here as to the cost of the particular securities sold, nor is there any dispute between the parties as to how long such securities were held prior to sale.[2] The only problem is to allocate the total sales proceeds between the securities held for more than six months and those held for six months or less. By reason of the manner in which the settlements were carried out, it was impossible to identify any particular securities or “when issued” purchase contracts with any corresponding “when issued” sales contracts. In the circumstances, it was necessary to adopt some arbitrary method of allocation. The difference between the parties relates to the method to be employed. The partnership computed an average sales price which was applied to all the securities involved, whereas the Commissioner used the actual sales prices and undertook to match them with the various securities sold, allocating the sales prices under the earliest “when issued” sales contracts to the securities first acquired,[3] and so forth. The method employed by the Commissioner is similar to the one used where securities acquired by a taxpayer at different costs and different times are commingled so that a sale of a part thereof cannot be identified as being from any particular purchase. In the latter circumstances, the so-called first in, first out rule requires that, in the absence of identification, the sale be charged against the earliest purchases. Snyder v. Commissioner, 295 U. S. 134; Helvering v. Rankin, 295 U. S. 123; Helvering v. Campbell, 313 U. S. 15, 20; Skinner v. Eaton (C. A. 2), 45 F. 2d 568; Snyder v. Commissioner (C. A. 3), 54 F. 2d 57; Commissioner v. Merchants' & Mfrs.’ Ins. Co. (C. A. 3), 72 F. 2d 408; Perkins v. United States (Ct. Cls.), 12 F. Supp. 481; Keeler v. Commissioner (C. A. 8), 86 F. 2d 265, certiorari denied 300 U. S. 673; Kraus v. Commissioner (C. A. 2), 88 F. 2d 616; Towne v. McElligott (S. D., N. Y.), 274 F. 960,963. The “first in, first out” rule is not a new one, nor was it devised for tax cases. It has its origin in the more distant past. As Judge Learned Hand remarked in Towne v. McElligott, supra, at p. 963: “The most natural analogy is with payment upon an open account, where the law has always allocated the earlier payments to the earlier'debts, in the absence of a contrary intention.” [4] Although the rule has at times been criticized (cf. Arrott v. Commissioner, 136 F. 2d 449, 451), it has nevertheless been widely followed, and normally furnishes a satisfactory and fair solution where the precise facts are not susceptible of ascertainment. Treasury regulations have provided for many years that where shares of stock in a corporation are sold from lots purchased at different times or at different prices, the stock sold is to be charged against the earliest purchases if the identity of the lots cannot be determined. See Regulations 111, sec. 29.22 (a)-8 and corresponding provisions of prior regulations. This case does not, of course, fall within the literal terms of the regulations, because we do not have before us the problem of which securities were sold. All of the securities were sold here, and the problem is to match selling prices with the particular securities sold. The petitioners appear to argue that since the regulations are not applicable, any rule comparable to the “first in, first out” rule is forbidden. But there is nothing in the regulations that is so limiting; and there is nothing in the regulations that prohibits the use of a comparable formula in a situation not strictly within the terms of the regulations, where such is not precluded by the statute. Cf. Helvering v. Campbell, 313 U. S. 15, 21, fn. 5. Petitioners place heavy reliance upon a line of decisions applying an “averaging” rule rather than the “first in, first out” rule, in order to determine the basis of securities in a new corporation received in a tax-free reorganization in exchange for different lots of securities in an old corporation, each such old lot having a different basis. See, e. g., Helvering v. Stifel (C. A. 4), 75 F. 2d 583; Christian W. Von Gunten, 28 B. T. A. 702, affd. (C. A. 6) 76 F. 2d 670; Commissioner v. Oliver (C. A. 3), 78 F. 2d 561; Commissioner v. Bolender (C. A. 7), 82 F. 2d 591; Arrott v. Commissioner (C. A. 3), 136 F. 2d 449; Raoul H. Fleischmann, 40 B. T. A. 672, 687-688. Cf. Big Wolf Corporation, 2 T. C. 751. But that line of cases constitutes an exception to the “first in, first out” rule. The result in such cases has been explained in terms of particular statutory provisions governing such situations (see Christian W. Von Gunten, 28 B. T. A. 702, 704), and the Court of Appeals for the Second Circuit in Kraus v. Commissioner, 88 F. 2d 616, 618, has refused to extend it to a related situation, where there was no change in corporate identity and where the old and the new securities were issued by the same corporation.[5] But whatever may be the precise scope of those decisions, we find nothing in them that precludes the matching of the prices under the “when issued” sales contracts chronologically with the costs of the securities sold in the order of their acquisition. Petitioners contend that the method of matching the cost or basis of the first acquired securities with the price on the earliest “when issued” sales contract is “arbitrary” and “contrary to fact.” However, we think it is no more “arbitrary” than the method proposed by petitioners. Indeed, their method would employ a wholly fictitious sales price, computed by averaging all the sales, whereas the Commissioner’s method more nearly approaches the truth by using the actual prices received. Nor is the Commissioner’s method “contrary to fact” in treating the sales as consummated on the dates the “when issued” sales contracts were executed, when in fact such sales actually occurred simultaneously on the settlement date (Lewis K. Walker, 35 B. T. A. 640). His. method does not treat the sales as consummated on the dates the “when issued” sales contracts were executed; on the contrary, he recognizes that the sales were made simultaneously on the settlement date, and it is only because of that fact that it is impossible to identify particular sales with specific securities, with the consequence that some method must be employed to determine the sales prices of the various securities sold. And we think that matching sales contracts with securities chronologically is as reasonable as any other method that has been suggested. We certainly cannot say that this method is wrong. Although we approve the Commissioner’s method generally, we disapprove the manner in which it was used in certain respects. Ordinarily, the dates of acquisition for the purpose of determining the holding period are the same dates of acquisition for the purpose of applying the “first in, first out” rule. Helvering v. Campbell, 313 U. S. 15, 21; Regulations 111, sec. 29.22 (a)-8. However, the Commissioner, as pointed out in footnote 3, supra,, departed from this principle in connection with the new securities received in exchange for interest on the old bonds and new securities attributable to the “when issued” purchase contracts. We see no reason for applying any fictitious or arbitrary order of dates of acquisition; the dates of acquisition for holding period purposes are known and they should be the same dates for purposes of matching sales prices against the securities sold.[6] With this modification, we approve the method employed by the Commissioner. Reviewed by the Court. Decisions will be entered tmder Bule SO. Since the new securities obtained for the principal of the old bonds were received tax-free in a reorganization, they were deemed to take over the holding period of the old bonds. Thus, the securities derived from the principal of bonds purchased on or before January 23, 1944, had a holding period of more than six months on July 24, 1944, the date of sale. But the new securities obtained for interest on the old bonds were not received tax-free, and their holding period has been fixed to begin on June 1, 1944, the date of final approval of the reorganization. And since the securities attributable to the partnership’s “when issued” purchase contracts cannot be treated as acquired prior to the settlement date (cf. Lewis Walker, 85 B. T. A. 640, 644-645; I. T. 3721, 1945 C. B. 164), their holding period began on the very date of sale. In fixing the dates of acquisition for this purpose, the Commissioner departed in two respects from the dates of acquisition used in computing the holding periods: (a) as to securities obtained for interest on the old bonds, he used the dates of acquisition of the bonds, rather than June 1, 1944; and (b) as to “when issued” purchase contracts, he used the dates of the execution of the contracts, rather than July 24,1944. The next sentence in Judge Hand’s opinion reads: “Accordingly, if all the new shares were not sold at once, I think the first sales should be attributed to the first purchases still remaining unsold * * The petitioners rely upon this sentence to support their contention that the “first in, first out” rule cannot apply where, as here, all the securities were sold at once. But in the situation presented in Towne v. McElligott there would be no problem requiring identification if the shares were all sold at one time, and we think that is all that Judge Hand meant by the quoted language. It certainly doesn’t suggest that a comparable rule would be inapplicable, even if all the sales were simultaneous, where it becomes necessary to match selling prices against particular purchases. The Kraus case was neither cited by the parties nor apparently was it considered by the Court in Pig Wolf Corporation, 2 T. c. 751. Of course, If it should be necessary to establish a sequence as between securities acquired on the same day, then it might be possible to adopt some such device as was spelled out in G. C. M. 11743, XII-2 C. B. 81, involving shares of stock acquired on the same day through the exercise of stock rights, whereby subsequent sales were related first to the rights growing out of the earliest purchase of the parent stock. Cf. Perkins v. United States (Ct. Cls.), 12 F. Supp. 481, certiorari denied 297 U. S. 710. Thus, if it were necessary'to establish a sequence as between different securities acquired on June 1, 1944, in exchange for interest on the old bonds, it might be feasible to relate such securities back to the dates of acquisition of the bonds themselves. But no such problem is here presented, since all of the securities thus acquired in exchange for bond interest were sold within less than six months.