## KEELER v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 10547.

Circuit Court of Appeals, Eighth Circuit.

Nov. 10, 1936.

A. F. Schaetzle, of Des Moines, Iowa, for petitioner.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, John M. Hudson, and Warren F. Wattles, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

This is a petition to review the redetermination of a deficiency in the income tax of petitioner for the year 1929. The facts are stipulated and, concisely, are as follows: In 1928, the petitioner was the owner of 7,300 shares of Lockheed Aircraft Company common stock. This stock had come to him as a bonus in connection with the acquisition of preferred stock. Later, petitioner sold all of the above preferred stock, and in connection with that sale applied the entire cost thereof against the selling price in his tax return—which action was approved by the Commissioner. In 1928, the petitioner received and exercised stock rights to purchase, at $6 per share, 5 shares of common stock for each share of common stock held by him and thus bought a total of 36,500 shares at a cost of $219,000. Later (in 1928) he sold 3,800 shares of the common stock, the certificates for which were identified as being 2,600 shares of the above bonus stock and 1,200 shares of the stock purchased under the above rights. The result of the above transactions was that as of January 1, 1929, the petitioner held 4,700 shares of the bonus stock and 35,300 shares of the acquired stock. All of this stock had been converted into street certificate form and thereafter was not capable of identification. During 1929 the petitioner sold 5,000 shares of the common stock thus represented by street certificates for $100,000. Both parties treat this last transaction to be a sale of capital assets. Neither this last sale price nor that a taxable profit was made by this sale is in dispute. The sole controversy is as to the acquisition cost of these 5,000 shares in order to determine the amount of such profit. The petitioner and the Commissioner used different methods and thus reached different results.

The contention of the petitioner is that the proper method is the so-called "average" method which he construes as meaning that the 7,300 shares of bonus stock to which no cost is given and the 36,500 shares acquired under the rights for $219,000 are to be added and the total ($219,000) is to be divided by the total number (43,800) shares—thus resulting in an average cost for all shares of $5.00 each. Applying this average cost to the 5,000 shares sold, the result is a cost or acquisition price of $25,000, leaving $75,000 as taxable profit.

*Writ of certiorari denied 57 S. Ct. —, 81 L. Ed. —.

The contention of the Commissioner is that the proper method to be applied is the so-called "first in first out" which, applied to the facts of this case, would result in 4,700 shares of the bonus stock at no cost and 300 shares of the acquired stock at $6 or a total cost price of $1800, leaving a taxable profit of $98,200.

■ The "first in first out" rule is an arbitrary, though practical, method of determining identification of shares where sales are made from mingled shares having different costs. Such rule has place only where two conditions exist: First, shares of the same general class acquired at different purchase costs;[1] second, such a commingling of the shares, that a sale therefrom cannot be identified as being from any particular purchase. There is no dispute here as to the fact that the identity of the 5,000 shares sold in 1929 cannot be established since they came from a larger number with different origins; hence the second condition above is present. The question is whether the first condition is present; that is, were the commingled shares acquired at different costs.

■ The effect of petitioner's contention is that they were acquired at the same cost. At the time of this sale, the commingled stock consisted of 4,700 shares of bonus stock and 35,300 shares purchased at $6 per share under stock rights flowing to petitioner as holder of bonus stock. The reason petitioner contends for a like cost price of bonus shares and of new shares is that he regards Miles v. Safe Deposit & Trust Co., 259 U.S. 247, 42 S.Ct. 483, 66 L.Ed. 923, as establishing a method of ascertaining cost basis which leads to such result—the method is the "average" rule. Clearly, the Miles Case announced the "average" rule as applicable in ascertaining the cost basis of subscription *rights*. Whether it is to be understood as announcing the same rule for cost basis of *shares* acquired by a stockholder under subscription rights coming to him on his stock is the first inquiry.

We think this settled against the petitioner by the direct statement in the opinion (259 U.S. 247, at page 253, 42 S.Ct. 483, 485, 66 L.Ed. 923) that: "What would have happened had defendant in error [stockholder] decided to accept the new shares and pay the issuing price instead of

selling the rights is of no consequence; in that event there would have been no realized profit, hence no taxable income." This quotation seems clearly to be an express reservation, for future determination, of the very matter now before us. It is true that certain language used by the Court (259 U.S. 247, at pages 253 and 254, 42 S. Ct. 483, 485, 66 L.Ed. 923) is general enough to cover the cost basis of stock acquired under such rights by the original stockholder. However, we have here an express reservation of the very situation before us fortified by the oft repeated caution and rule that the language of an opinion is to be regarded as confined to the matter before the court for decision. Humphrey's Executor v. United States, 295 U.S. 602, 626, 55 S.Ct. 869, 873, 79 L. Ed. 1611; Williams v. United States, 289 U.S. 553, 568, 53 S.Ct. 751, 755, 77 L.Ed. 1372; O'Donoghue v. United States, 289 U. S. 516, 550, 53 S.Ct. 740, 750, 77 L.Ed. 1356; Sterling v. Constantin, 287 U.S. 378, 400, 53 S.Ct. 190, 196, 77 L.Ed. 375; Safe Deposit & Trust Co. v. Virginia, 280 U.S. 83, 94, 50 S.Ct. 59, 61, 74 L.Ed. 180, 67 A. L.R. 386; Sinclair. v. United States, 279 U.S. 749, 767, 49 S.Ct. 471, 477, 73 L.Ed. 938, 63 A.L.R. 1258. We have carefully considered Todd v. Commissioner, 72 F. (2d) 998 (C.C.A.3), but we cannot recognize the Miles Case as going beyond approving the "average" rule as proper in ascertaining cost basis for subscription *rights* (not exercised but sold).

Although the Miles Case is not authority ruling the instant issue, yet the inquiry remains as to whether the "average" rule should be deemed applicable. We think not. The "average" rule (for lack of something better) may be capable of application where the cost value of subscription *rights* must be ascertained. This because of the nature of rights. Such rights have intrinsic value. Why is such value completely lost if it is made use of by the stockholder? If it retains any value, the cost of the new stock is, obviously, this subscription right value plus the subscription price of the new stock. If this be true, the cost price of subscription right stock must be different from the cost of the stock as to which the right came into being even if—in fact, because—the "average" rule be employed to ascertain the value of the subscription right. Thus

---

[1] Of course, if all the stock had the same cost value there would be no need of specific identification for basic cost purposes.

there is the first condition above for application of the "first in first out" rule, namely, a commingling of stocks of different costs bases.

Both conditions governing application of the "first in first out" rule being here present, the Board of Tax Appeals was right in approving the action of the Commissioner in using that rule, and therefore the determination of the Board of Tax Appeals is affirmed.