THE SHELL COMPANY (PUERTO RICO) LTD., Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellant.

No. 12543. Submitted April 22, 1960.—Decided May 31, 1961.

J. B. *Fernández Badillo, Secretary of Justice, Arturo Estrella, Assistant Secretary,* and *Cándido Ceballos, Assistant Attorney General,* for appellant. *Gonzalo Sifre, Fernando Ruiz-Suria,* and *Angel M. Martín,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Shell Company (Puerto Rico) Limited filed a complaint in the Superior Court against the Secretary of the Treasury for refund of taxes. It alleged, in synthesis, that prior to April 20, 1956 it introduced in Puerto Rico various quantities of the following oil products: grease, oils and lubricants, fuel oil and kerosene, on which it paid the corresponding excises pursuant to law; that when the operations began on April 20, 1956, it made an inventory in all its branches, of the supply of the above-mentioned products, which inventory reveals a stock of different quantities of the above-mentioned products, over which it had paid the corresponding excises; that since April 20, 1956 and until the following May 31, plaintiff sold some of the afore-mentioned

petroleum by-products to ships, to be used in their trips asea beyond the territorial limits of Puerto Rico; that these sales were made out of the stock which plaintiff had at the beginning of its operations on April 20, 1956 and for which it had already paid the excises levied by law; that prior to April 20, 1956 plaintiff had requested and obtained refunds of excise paid on the above-mentioned petroleum by-products when these were sold to ships to be used by them in their plying between Puerto Rico and other places; that on May 14, 1956 and on June 13 of the same year plaintiff requested from the Secretary of the Treasury, and the latter refused on subsequent dates, to refund the amounts of $2,057.88 and $2,459.98 as excise paid on petroleum by-products sold to ships to be used in trips across the sea outside the territorial limits of Puerto Rico; that plaintiff sustained the burden of said taxes.

The Secretary of the Treasury answered accepting some facts and denying others. He specifically accepted the fact that plaintiff, after April 20, 1956 sold petroleum by-products for use outside Puerto Rico, but denied the fact that the sales were made of the stock which it had at the beginning of the operations of April 20, 1956. He also alleged that he refused the refunds requested which corresponded to "fuel oil," grease and lubricating oils, because these products had not been taxed since April 20, 1956, since on that date Act No. 1 of June 22, of 1942, as amended by Act No. 5 of March 31, 1947, which granted them excise exemption was repealed by Act No. 2 of January 20, 1956; as to the other products, gasoline and diesel gas oil, he alleged that he had accepted the claims for reimbursement for the amounts of $1,862.63, and $1,366.12, which were the amounts claimed and in the process of being refunded.

In the pretrial conference, defendant conditionally accepted that plaintiff had borne the burden of the tax.[1]

---

[1] Said acceptance was set forth in the following manner:

" 'It is accepted that the burden of the tax was sustained if the court reaches the conclusions that in view of the inventory accounting system

Afterwards, the parties submitted the case on the stipulation of the following facts:

"1. That prior to April 20, 1956 plaintiff introduced in Puerto Rico petroleum by-products of the nature of those referred to in the refund claims in this case as part of the necessary supplies to attend to the necessities of its business in Puerto Rico, which included and includes the distribution and sale to clients who might use said petroleum by-products within and outside Puerto Rico, and plaintiff paid respondent the corresponding taxes when it introduced said products in Puerto Rico.

"2. That subsequent to April 19, 1956 plaintiff introduced in Puerto Rico and continues to introduce in order to meet the needs of its business, petroleum by-products of the same nature as those to which the refund claims of this case refer without any tax having been paid thereon because said tax had been repealed by virtue of the Excise Act of Puerto Rico (Act No. 2 enacted on January 20, 1956).

"3. That the by-products of petroleum to which the complaint in this case refers, introduced prior to April 20, 1956, as well as those introduced in different shipments after that date, were intermingled when they were stored in the tanks and warehouses which plaintiff has for that purpose.

"4. That the accounting system used by plaintiff is that known as 'first-in-first-out' whereby each sale made is attributed to the first goods purchased and the goods that remain in the inventory are deemed to be the latest purchases in the books, hence, the sales covered by the refunds sought in this case did not exhaust the amounts of said products inventoried in the books on April 19, 1956.

"5. That the sale made by plaintiff of the products involved in the claims for refund herein was made for a price which did not include any tax whatever.

"6. The refunds sought by plaintiff were for $2,057.06 (not $2,057.88 as erroneously alleged in the complaint) and for $2,459.88. Defendant refused the refunds sought which referred to 'fuel oil', grease and lubricating oils, amounting to $194.43 and $1,093.76, respectively, because it was understood that since April 20, 1956 the refund of taxes paid on those products did not

used by plaintiff and known as first-in-first-out, the sale of products to which the refund sought refers may be considered as made from the stock which plaintiff had in its warehouses on April 19, 1957'."

lie; but as to the refunds requested for the other products, gasoline, and 'diesel gas oil,' defendant accepted said claims for refund, for the sums amounting to $1,862.63 and $1,366.12, claims which were approved by the Secretary of the Treasury and paid to plaintiff." (Tr. R. pp. 7, 8 and 9.)

The Superior Court rendered judgment granting the complaint and ordering the corresponding refund. Defendant requested the reconsideration of said judgment and the court set a day to hear the parties. At that hearing the presiding judge said he was doubtful as to certain stipulated facts. The doubt was clarified by the parties by the following stipulation:

"In relation to the doubt expressed by this Honorable Court as to the scope of paragraph 4 of the Stipulation of Facts of December 31, 1957, the parties wish to make clear that said paragraph 4 establishes the fact that the sales of the petroleum by-products covered by the requests for refunds to which this case refers, added to the other sales of said products made by plaintiff during the period covered by the requests for refund litigated herein, did not exhaust the supplies of said products inventoried in the books on April 19, 1956, according to the accounting system of inventories known as 'first-in-first-out,' whereby as soon as a sale is made it is attributed to the first items acquired, the most recent acquisition always being reflected in the inventory of the products." (Tr. R. p. 20.)

Finally, the motion for reconsideration was denied and defendant has charged the trial court with the commission of the following errors:

"The trial court committed a serious error of law in ordering the refund of taxes to which the complaint refers in the case at bar, because:

"(a) It was not proved that the products sold for use outside Puerto Rico, to which the case at bar refers, are the same as those on which plaintiff-appellee paid a tax upon introduction thereof.

"(b) Even if such thing was proved, which is not true, there is no law authorizing refund after April 20, 1956, date of effectiveness of Act No. 2 of January 20, 1956, *supra*."

In discussing the first error, appellant maintains that. as a preliminary jurisdictional question, to obtain refund, plaintiff-appellee had the duty to identify, one by one, all the products it sold to be used outside of Puerto Rico, that is, that the products sold after April 19, 1956 for use outside Puerto Rico, were part of the stock which plaintiff kept before April 19 and on which it had paid the corresponding tax. According to its theory, if this is not proved, the court has no jurisdiction since it has not been proved that the taxpayer had borne the burden of the tax.

The foregoing Internal Revenue Law of Puerto Rico (No. 85 of August 20, 1925) established a tax on petroleum products such as those listed in the complaint: kerosene, fuel oil, lubricating oils and greases.[2] Subsequently, Act No. 1 of June 22, 1942 established an exemption for petroleum by-products which were distributed from Puerto Rico after June 15, 1942, for their use outside the Island. Said Act provided that such products would be exempt from the levying and collection of all kinds of excise taxes and it authorized the former Treasurer of Puerto Rico to establish tanks and warehouses for the petroleum by-products thus exempt. It also empowered the Treasurer to refund taxes paid on the pre-troleum by-products which since June 15, 1942 would have been distributed from Puerto Rico for use outside the Island.[3]

---

[2] Section 16 of said Law, paragraphs 29, 30, 32 and 33, respectively, amended by Act No. 158 of May 13, 1941 (13 L.P.R.A. §§ 1059, 1060, 1062 and 1063).

[3] The above-mentioned Act No. 1 of 1942 was amended by Act No. 5 of March 31, 1947. The amendment gave a permanent nature to the exemption since the original Act granted it only during the then existing state of war and until 90 days after the end of the hostilities on the part of the United States of America. The amendment also included but without limiting the same, the supply of petroleum and its by-products to ships and airplanes for their own use in their maritime and air trips between Puerto Rico and other places. It also provided that said paid taxes would be returned by the Treasurer when the adequate evidence of such distribution was offered and that the reimbursement would be given to the taxpayer or to the ship company or airplane company, or another person or institution which could use the exempt products for the above-mentioned purposes, as soon as the latter could prove its right to such refund.

The record in this case shows that after the effectiveness of the Act which created the exemption, plaintiff introduced in Puerto Rico petroleum by-products to be sold or distributed from its tanks or warehouses, for use within Puerto Rico or outside the Island, and that upon its introduction, plaintiff paid the corresponding taxes. If it sold or distributed these products or parts thereof for use outside Puerto Rico, then it requested and obtained from the Treasurer the refund paid on said products. It seems that plaintiff did not deposit in tanks or bonded warehouses the petroleum by-products which it introduced in Puerto Rico for use outside the Island or supplied to ships and airplanes for use by them in their plying between Puerto Rico and other places, for in such case it did not have the duty to pay excise taxes. At least, the record shows that plaintiff introduced in Puerto Rico after the effectiveness of Act No. 1 of 1942, petroleum by-products to be used in the Island and also for its use outside the Island, intermingling them in the same tanks and warehouses. For that reason it paid the excise taxes when said products were first brought to Puerto Rico and thereafter when it sold them to be used outside Puerto Rico, requested and obtained the refund of excise taxes paid on the products sold for that purpose.

Act No. 1 of 1942, as amended by Act No. 5 of May 31, 1947, was in effect until April 19, 1956, date on which it was repealed by the Excise Act of Puerto Rico—Act No. 2, enacted January 20, 1956—[13 L.P.R.A. §§ 4001 to 4103, Cum. Supp.]. This new Act did not tax the products on which refund is claimed not even when used in Puerto Rico. Hence, at the beginning of the operation on April 20, 1956, plaintiff made an inventory in all its branches of the stock of the products mentioned in the complaint and on which it had paid the excise provided by law. Subsequent to April 19, 1956, plaintiff introduced in Puerto Rico products of the same nature as those on which the refund is sought in this case without having paid excise on them because the tax levied thereon by

the Excise Act of 1956 was repealed. The products introduced in Puerto Rico by plaintiff before April 20, 1956 and inventoried on that date, as well as those subsequently introduced free from taxes, were intermingled and stored in the tanks and warehouses which plaintiff has for that purpose.

Between April 20, 1956 and the following May 31, plaintiff made various sales of petroleum by-products to ships for use by them in their plying outside the territorial limits of Puerto Rico. The products thus sold came from plaintiff's tanks and warehouses, where the taxed products were intermingled with those introduced free of tax. Plaintiff presumed, on the basis of its accounting system, that the products thus sold were part of the first introduced into Puerto Rico and on which it had paid taxes and requested the corresponding refund.

We have seen that the parties stipulated that the inventory accounting system used by plaintiff is known as "first-in-first-out," whereby each sale made is attributed to the first goods purchased and the goods that remain in the inventory are deemed to be the latest purchases in the books, hence, the sales covered by the refunds sought in this case did not exhaust the amounts of said products inventoried in the books on April 19, 1956.

The above-mentioned inventory system "first-in-first-out" as plaintiff states, is a method developed throughout the years by the mercantile enterprises which intermingle the items bought with those already acquired, in such a manner that they may not be identified later in order to determine their cost. In truth the rule is not a rule of law or of logic but rather a presumption of fact which operates to change the burden of proof. *Ninth Bank & Trust Co.* v. *United States*, 15 F. Supp. 951. This method has been sanctioned by law. The Income Tax Act of 1954 provides that "inventories shall be taken by such taxpayer upon such basis as the Secretary may prescribe, conforming as nearly as may be to the best accounting practice in the trade or business." Section 22 (c),

Act No. 91 of June 29, 1954. And in the Regulations to implement the Income Tax Act the "first-in-first-out" inventory system is set forth by means of the following provisions:

"Goods taken in the inventory which have been so intermingled that they cannot be identified with specific invoices will be deemed to be the goods most recently purchased or produced, and the cost thereof will be the actual cost of the goods purchased or produced during the period in which the quantity of goods in the inventory has been acquired." Section 22(c)-(2)(d), Regulations for the Application of the Income Tax Act of 1954."

Commentators maintain that a regulation provision such as the former is but another example of the "first-in-first-out" rule. Stanley & Kilcullen, *The Federal Income* Tax, 49 (1951). See, also, Lasser, *Handbook of Tax Techniques* 203 (1951).[4]

In truth, even if it were a question of an accounting fiction, as plaintiff alleges, the nearest possible way to the better practice of accounting applicable to plaintiff's business, for its book-keeping, was using the inventory method known as "first-in-first-out" particularly if it is considered that due to the nature of the products involved, once they were intermingled, its identification was rendered impossible.

At any rate it is an undeniable fact that the petroleum by-products sold by plaintiff after April 19, 1956 to ships for use outside Puerto Rico and which caused the refund claim did not exhaust the supplies inventoried on April 20 of said year, on which it had paid excises. Therefore, there is no danger that the Secretary of the Treasury may refund taxes which have not been really and actually paid.

■■ However, the Secretary of the Treasury maintains that there is no law authorizing the refund which plaintiff-

---

[4] The "first-in-first-out" method has been adopted by the Federal Department of the Treasury to determine the cost of shares in corporations in order to compute the taxable gain of a sale when the shares have been bought on different dates and at different prices and may not be identified. *Comm. of Internal Revenue* v. *Oliver*, 78 F.2d 561; *Keeler* v. *Comm. of Internal Revenue*, 86 F.2d 265.

appellee requests. This contention is that the Excise Act of 1956, which expressly repealed Act No. 1 of 1942, as the latter was amended by Act No. 5 of 1947, does not contain any provision whatsoever which empowers the Secretary to refund excise paid on tax exempt products.

It may be noted that Act No. 1 of 1942 contained a provision which authorized the Treasurer to refund excise paid on products distributed in Puerto Rico for use outside the Island from and after June 15, 1942. This provision was necessary because the exemption was made retroactive to a date prior to the enactment of said Act and during that period products which fall under the exemption but which had been introduced in Puerto Rico before the exemption was created, were sold. As appellee points out, said law does not contain any provision whatsoever for the return of excise paid on and after the effective date of the Act on petroleum by-products introduced for general purposes and distributed subsequently for tax-exempt purposes. This was unnecessary because there was an Act which authorized the Treasurer to refund moneys improperly collected or in excess of the proper amount. Act of February 12, 1904. See *Pyramid Products* v. *Buscaglia, Treas.*, 64 P.R.R. 788, 805. The Act of 1947, which amended Act No. 1 of 1942, retained a similar provision on refund and made clear who were the persons or institutions entitled to request refund. We have already said that the Excise Act of 1956, which repealed the two above-mentioned Acts, did not eliminate exemption on products herein involved and re-established the excise. On the contrary, by virtue of said Act the petroleum by-products in question remained absolutely tax-exempt.

On May 10, 1949 the Legislature enacted Act No. 232 of that year, providing for refund or credit, with interest, of any kind of taxes paid or collected unlawfully or unduly, or in excess of the proper amount. Section 1 provided that when any taxpayer believes that he has paid or that there has been collected from him, unlawfully or unduly, or in excess of the

amount due, a tax of any kind, he may apply in writing to the Treasurer of Puerto Rico for the reimbursement of credit of the same, setting forth the reasons he may have therefor. The same article authorizes the Treasurer, in appropriate cases, on his own initiative or upon Treasurer's request to reimburse to the taxpayer, or to credit the tax collected or paid unlawfully or unduly, or in excess of the amount due. Despite the existence of this Act authorizing the refund or credits of taxes in the circumstances specified in the statute itself, the Secretary of the Treasury argues that here it is not a matter of taxes paid or collected illegally or unduly, because when the products were introduced in Puerto Rico they were taxable and therefore, the payment and collection of excises was legal.

We would hardly resort to such a technical argument to deny a taxpayer of his right. The truth is that the above-mentioned products, when they were introduced in Puerto Rico for use outside the Island, were free from the levying and collection of any excise tax levied by the Internal Revenue Acts. What happened was that instead of said products having been deposited in bonded tanks and warehouses, in which case they were not taxable upon their introduction, they were deposited in tanks and warehouses of products destined for sale and distribution inside as well as outside Puerto Rico. Therefore, the practice of requesting and obtaining the reimbursement of tax paid when selling products for exempt purposes was continued by plaintiff and accepted by the Secretary. It can not be maintained with sound logic that the excises have not been unduly paid, when the products on which they were paid became exempt when the event which qualified them as exempt products occurred.

We conclude, therefore, that by virtue of the provisions of Act No. 232 of 1949, the Secretary of the Treasury is authorized to refund the excises claimed by the taxpayer in this case.

In view of the foregoing, the judgment rendered by the Superior Court is affirmed.

Mr. Justice Santana Becerra did not participate herein.