THE SHELL COMPANY (PUERTO RICO) LTD., demandante y recurrida, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrente.

Número 12543.

*Sometido:* 22 de abril de 1960.   *Resuelto:* 31 de mayo de 1961.

J. B. Fernández Badillo, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar y Cándido Ceballos, Procurador Auxiliar, abogados del recurrente; Gonzalo Sifre, Fernando Ruiz-Suria y Angel M. Martín, abogados de la recurrida.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del Tribunal.

The Shell Company (Puerto Rico) Limited interpuso demanda en el Tribunal Superior contra el Secretario de Hacienda sobre reintegro de contribuciones. Alegó en síntesis, que con anterioridad al día 20 de abril de 1956 introdujo en Puerto Rico varias cantidades de los siguientes productos de petróleo: grasas, aceites y lubricantes, aceite combustible (*fuel oil*) y kerosina, sobre los cuales pagó los arbitrios correspondientes de acuerdo con la ley; que al comienzo de operaciones del día 20 de abril de 1956, practicó un inventario en todos sus establecimientos de las existencias de los mencionados productos, cuyo inventario revela existencias de diversas cantidades de los referidos productos sobre los cuales había pagado los arbitrios correspondientes; que desde el día 20 de abril de 1956 y hasta el día 31 de mayo siguiente la demandante efectuó varias ventas de los productos de petróleo antes mencionados a barcos para ser usados dichos productos por éstos en sus viajes por mar fuera de los límites territoriales de Puerto Rico; que estas ventas se hicieron de las existencias que la demandante tenía al comienzo de operaciones del día 20 de abril de 1956 y por cuyas existencias ya había pagado los arbitrios que impone la ley; que con anterioridad al 20 de abril de 1956 la demandante había solicitado y obtenido reintegros de arbitrios pagados sobre los susodichos productos de petróleo cuando éstos eran vendidos a barcos para ser usados en sus viajes por mar entre Puerto Rico y otros lugares; que en 14 de mayo de 1956 y 13 de junio del mismo año la demandante solicitó del Secretario de Hacienda, y éste le denegó en fechas posteriores, el reintegro de las sumas de $2,057.88 y $2,459.98 por concepto de arbitrios pagados sobre productos de petróleo vendidos a barcos para ser usados en viajes por mar fuera de los límites territoriales de Puerto Rico; que la demandante sufrió el peso del pago de dichas contribuciones.

Contestó el Secretario de Hacienda aceptando algunos hechos y negando otros. Específicamente aceptó el hecho de que la demandante, con posterioridad al 20 de abril de 1956 hizo ventas de productos de petróleo para ser usados fuera de Puerto Rico, pero negó que dichas ventas se hicieran de las existencias que tenía al comienzo de las operaciones del día 20 de abril de 1956. Alegó también que denegó los reintegros solicitados correspondientes a "fuel oil", grasas y aceites lubricantes porque estos productos no estaban gravados a partir del 20 de abril de 1956, ya que a partir de esa fecha la Ley Núm. 1 de 22 de junio de 1942, enmendada por la Ley Núm. 5 de 31 de marzo de 1947, que les concedía exención del pago de arbitrios, quedó derogada por la Ley Núm. 2 de 20 de enero de 1956; en cuanto a los otros productos, gasolina y "diesel gas oil", alegó que había aceptado las reclamaciones de reintegro por las cantidades reclamadas ascendentes a $1,862.63 y $1,366.12, las que estaban en trámites para su reintegro.

En la conferencia con antelación al juicio el demandado aceptó condicionalmente que la demandante había sufrido el peso del pago de la contribución.[1]

Luego las partes sometieron el caso por estipulación de los siguientes hechos:

"1. Que con anterioridad al 20 de abril de 1956 la demandante introdujo en Puerto Rico productos de petróleo de la naturaleza de los que se refieren las reclamaciones de reintegro de este caso como parte de las existencias necesarias para atender a las necesidades de su negocio en Puerto Rico que incluía e incluye las de distribución y venta a clientes que utilizarían dichos productos de petróleo para su uso dentro de Puerto Rico

[1] Dicha aceptación se expuso así:
"Se acepta que se sufrió el peso del pago de la contribución si el tribunal llega a la conclusión de que en vista del sistema de contabilidad de inventario que utiliza la demandante conocido como 'first-in-first-out', las ventas de los productos a que se refiere el reintegro solicitado puedan considerarse efectuadas del inventario que tenía la demandante en sus almacenes a abril 19 de 1957."

y fuera de Puerto Rico, y la demandante pagó al demandado los arbitrios correspondientes cuando introdujo dichos productos en Puerto Rico.

"2. Que con posterioridad a abril 19 de 1956 la demandante introdujo en Puerto Rico y continúa introduciendo para atender las necesidades de su negocio, productos de petróleo de la misma naturaleza de aquellos a que se refieren las reclamaciones de reintegro de este caso sin haberse pagado arbitrios sobre ellos por haberse derogado el impuesto fijado a los mismos por virtud de la Ley de Impuestos sobre Artículos de Uso y Consumo (Ley Número 2 aprobada en 20 de enero de 1956).

"3. Que tanto los productos de petróleo a que se refiere la demanda en este caso introducidos antes de abril 20, de 1956, como los introducidos por los distintos embarques después de esa fecha se mezclaron almacenándose conjuntamente en los tanques y almacenes que tiene la demandante para ese fin.

"4. Que el sistema de contabilidad de inventarios que utiliza la demandante es el conocido como 'first-in-first-out', mediante el cual según se efectúa una venta ésta se atribuye a las primeras partidas adquiridas reflejando siempre el inventario de productos en los libros las compras más recientes, resultando así que las ventas cubiertas por las solicitudes de reintegro a que se refiere este caso no agotaron las cantidades de dichos productos inventariadas en los libros al 19 de abril de 1956.

"5. Que al efectuar la demandante la venta de los productos a que se refieren las reclamaciones de reintegro de este caso, lo hizo por precio que no incluía cantidad alguna por concepto de arbitrios.

"6. Los reintegros solicitados por la demandante lo fueron por $2,057.06 (no $2,057.88 como erróneamente se alega en la demanda), y por $2,459.88. El demandado denegó los reintegros solicitados que se refieren a 'fuel oil', grasas y aceites lubricantes, ascendentes a $194.43 y $1,093.76 respectivamente, por entender que a partir de abril 20 de 1956 no procede el reintegro de los arbitrios pagados por concepto de dichos productos; pero en cuanto a los reintegros solicitados por concepto de los otros productos, gasolina y 'diesel gas oil' el demandado aceptó dichas reclamaciones de reintegro, por las cantidades reclamadas ascendentes a $1,862.63 y $1,366.12, reclamaciones que fueron aprobadas por el Secretario de Hacienda y pagadas a la demandante."   (T. A., págs. 7, 8 y 9.)

El Tribunal Superior dictó sentencia declarando con lugar la demanda y ordenando el reintegro correspondiente. Solicitó el demandado la reconsideración de dicha sentencia y el tribunal señaló una vista para oir a las partes. Durante esa vista el Juez que presidía expresó tener duda en cuanto a ciertos hechos estipulados. La duda fue aclarada por las partes mediante la siguiente estipulación:

"En relación con la duda expresada por este Honorable Tribunal en cuanto al alcance del párrafo 4 de la Estipulación de Hechos de 31 de diciembre de 1957, las partes desean dejar aclarado que dicho párrafo 4 establece el hecho de que las ventas de los productos de petróleo cubiertas por las solicitudes de reintegro a que se refiere este caso sumadas a las otras ventas de dichos productos efectuadas por la demandante durante el período cubierto por las solicitudes de reintegro aquí en litigio, no agotaron las cantidades de dichos productos inventariados en los libros al 19 de abril de 1956, de acuerdo con el sistema de contabilidad de inventario conocido como 'first-in-first-out', mediante el cual según se efectúa una venta ésta se atribuye a las primeras partidas adquiridas, reflejando siempre el inventario de productos en los libros las compras más recientes." (T. A., pág. 20.)

Finalmente la moción de reconsideración fue declarada sin lugar y el demandado ante nos ha imputado al tribunal sentenciador la comisión de los siguientes errores:

"El tribunal inferior cometió grave error de derecho al ordenar el reintegro de los arbitrios a que se refiere la demanda en el presente caso, porque:

"(a) No se probó que los productos vendidos para uso fuera de Puerto Rico, a que se refiere el presente caso, sean los mismos sobre los cuales la demandante-apelada pagó el arbitrio a su introducción.

"(b) Aun cuando se hubiere probado tal cosa, lo que no es correcto, no hay ley que autorice el reintegro a partir del 20 de abril de 1956 fecha de vigencia de la Ley núm. 2 de 20 de enero de 1956, supra."

■■ Discutiendo el primer error, sostiene el recurrente que como cuestión previa jurisdiccional para obtener el rein-

tegro, la demandante recurrida venía obligada a identificar, uno por uno, todos los productos vendidos por ella para uso fuera de Puerto Rico, o sea, que los productos vendidos después del 19 de abril de 1956 para su uso fuera de Puerto Rico eran parte de las existencias que tenía la demandante antes del 19 de abril y sobre los cuales había pagado el arbitrio correspondiente. Según su tesis, si esto no queda demostrado, la corte no tiene jurisdicción ya que no se ha probado que la contribuyente sufrió el peso del pago de la contribución.

La anterior Ley de Arbitrios (Núm. 85 de 20 de agosto de 1925) establecía un arbitrio sobre productos de petróleo como los relacionados en la demanda: kerosene, fuel oil, aceites lubricantes y grasas. [2] Posteriormente la Ley núm. 1 de 22 de junio de 1942, estableció una exención sobre los productos de petróleo que a partir del 15 de junio de 1942 fueran distribuidos desde Puerto Rico para uso fuera de la Isla. Disponía dicha ley que tales productos quedarían exentos de la imposición y el cobro de toda contribución de arbitrios y autorizó al entonces Tesorero de Puerto Rico para establecer tanques y almacenes de adeudo para los productos de petróleo así exentos. También autorizó al Tesorero a reintegrar los arbitrios ya pagados sobre los productos de petróleo que a partir del 15 de junio de 1942 hubieren sido distribuidos desde Puerto Rico para uso fuera de la Isla. [3]

---

[2] Sección 16 de dicha Ley, incisos 29, 30, 32 y 33 respectivamente, enmendada por la Ley Núm. 158 de 13 de mayo de 1941 [13 L.P.R.A., secciones 1059, 1060, 1062 y 1063].

[3] La citada Ley Núm. 1 de 1942 fue enmendada por la Ley Núm. 5 de 31 de marzo de 1947. La enmienda dio carácter permanente a la exención ya que la ley original la concedía solamente durante el estado de guerra entonces existente y hasta 90 días después del cese de las hostilidades por parte de Estados Unidos de América. La enmienda también incluyó, pero sin limitarlo, el suministro de petróleo y sus derivados a barcos y aviones para ser usados por éstos en sus viajes por mar y aire entre Puerto Rico y otros sitios. También dispuso que dichos arbitrios pagados serían devueltos por el Tesorero a la presentación de prueba adecuada de tal distribución y que el reembolso se haría al contribuyente o a la compañía de vapores, compañía de aviones, u otra persona o entidad que usaren los productos exentos para los fines especificados, según ésta evidenciaría su derecho a tal reintegro.

El récord de este caso demuestra que después de estar en vigor la ley creando la exención, la demandante introducía en Puerto Rico productos de petróleo para ser vendidos o distribuidos desde sus tanques o almacenes, para uso en Puerto Rico o para uso fuera de la Isla y que al efectuarse la introducción, la demandante pagaba los arbitrios correspondientes. Si vendía o distribuía esos productos o parte de ellos para uso fuera de Puerto Rico, entonces solicitaba y obtenía del Tesorero el reintegro pagado sobre dichos productos. Parece ser que la demandante no depositaba en tanques o almacenes de adeudo los productos de petróleo que introducía en Puerto Rico para ser usados fuera de la Isla o suministrados a barcos y aviones para ser usados por éstos en sus viajes por mar y aire entre Puerto Rico y otros sitios, pues en tal caso, no venía obligada a pagar arbitrios. Por lo menos, el récord demuestra que la demandante introducía en Puerto Rico después de estar en vigor la Ley núm. 1 de 1942, productos de petróleo para ser usados en la Isla, y también para su uso fuera de la Isla, mezclando los unos con los otros en los mismos tanques y almacenes. Por esa razón pagaba los arbitrios al efectuarse la introducción en Puerto Rico de dichos productos y luego cuando los vendía para uso fuera de Puerto Rico, solicitaba y obtenía el reintegro de los arbitrios pagados sobre los productos vendidos para ese fin.

La Ley núm. 1 de 1942, según enmendada por la Ley núm. 5 de 31 de mayo de 1947, estuvo en vigor hasta el 19 de abril de 1956, fecha en que quedó derogada por la Ley de Impuestos Sobre Artículos de Uso y Consumo—Ley núm. 2, aprobada en 20 de enero de 1956—[13 L.P.R.A., secciones 4001 a 4103, Suplemento Acumulativo]. Esta nueva ley no tributó los productos sobre los cuales se reclama el reintegro ni aun cuando se usen en Puerto Rico. De ahí que al comienzo de operaciones del día 20 de abril de 1956, la demandante practicó un inventario en todos sus establecimientos de las existencias de los productos relacionados en la demanda y sobre

los cuales había pagado los arbitrios de Ley. Con posterioridad al 19 de abril de 1956 la demandante introdujo en Puerto Rico productos de la misma naturaleza de aquéllos a que se refieren las reclamaciones de reintegro en este caso sin haber pagado arbitrios sobre ellos por haberse derogado el impuesto fijado sobre los mismos por la Ley de Impuestos sobre Artículos de Uso y Consumo de 1956. Tanto los productos introducidos en Puerto Rico por la demandante antes del 20 de abril de 1956 y que fueron inventariados en esa fecha, como los introducidos posteriormente libres de impuestos, se mezclaron almacenándose conjuntamente en los tanques y almacenes que tiene la demandante para ese fin.

Entre el 20 de abril de 1956 y el 31 de mayo siguiente la demandante efectuó varias ventas de productos de petróleo a barcos para ser usados por éstos en sus viajes por mar fuera de los límites territoriales de Puerto Rico. Los productos así vendidos provenían de los tanques y almacenes de la demandante donde se encontraban mezclados los productos que habían tributado con aquéllos introducidos libres de impuestos. La demandante consideró, a base de su sistema de contabilidad, que los productos así vendidos eran parte de los primeros que introdujo en Puerto Rico y sobre los cuales había pagado arbitrios y solicitó el reintegro correspondiente.

Hemos visto que las partes estipularon que el sistema de contabilidad de inventarios que utiliza la demandante es el conocido como "first-in-first-out", mediante el cual según se efectúa una venta ésta se atribuye a las primeras partidas adquiridas reflejando siempre el inventario de productos en los libros las compras más recientes, resultando así que las ventas cubiertas por las solicitudes de reintegro a que se refiere este caso no agotaron las cantidades de dichos productos inventariados en los libros al 19 de abril de 1956.

El indicado sistema de inventario "first-in-first-out", según expone la demandante, es un método desarrollado a través de los años por las empresas mercantiles que mezclan

sus artículos comprados con los ya adquiridos en tal forma que no pueden ser éstos luego identificados para los efectos de determinar su costo. En realidad la regla no es una de derecho o de lógica sino que es más bien una presunción de hecho que opera en el sentido de cambiar el peso de la prueba *Ninth Bank & Trust Co.* v. *United States,* 15 F. Supp. 951. Este método ha sido sancionado por la ley. La Ley de Contribuciones sobre Ingresos de 1954 dispone que el contribuyente "estará obligado a practicar inventarios sobre la base que el Secretario prescriba, conforme tan aproximadamente como sea posible a la mejor práctica de contabilidad aplicable a la industria o negocio". Sec. 22 (*c*), Ley Núm. 91 de 29 de junio de 1954. Y en el Reglamento para instrumentar la Ley de Contribuciones sobre Ingresos queda consignado el sistema de inventario "first-in-first-out" mediante la siguiente disposición:

"Los artículos incluidos en el inventario que se han mezclado entre sí hasta el punto de no poderse identificar en relación con las facturas correspondientes se considerará que son los artículos más recientemente adquiridos o producidos, y el costo de los mismos será el costo real de una cantidad igual de artículos similares comprados o producidos durante el período en el cual la cantidad de artículos en el inventario fue adquirido." Artículo 22(*c*)-2(*d*), Reglamento para la Aplicación de la Ley de Contribuciones sobre Ingresos de 1954.

Los comentaristas sostienen que una disposición reglamentaria como la anterior no es otra cosa que un ejemplo más de la regla "first-in-first-out". Stanley & Kilcullen, *The Federal Income Tax,* 1951, pág. 49. Véase además, Lasser, *Handbook of Tax Techniques,* 1951, pág. 203.([4])

En verdad, aun cuando se tratara de una ficción de contabilidad, como alega el recurrente, la forma más aproximada

---

([4]) El método de "first-in-first-out" ha sido adaptado por el Departamento del Tesoro Federal para determinar el costo de acciones corporativas al computar la ganancia tributable de una venta cuando las acciones se han comprado en distintas fechas y a precios distintos y no se pueden identificar. *Comm. of Internal Revenue* v. *Oliver,* 78 F.2d 561; *Keeler* v. *Comm. of Internal Revenue,* 86 F.2d 265.

posible a la mejor práctica de contabilidad aplicable al negocio de la demandante, para llevar sus libros, era utilizando el método del inventario conocido como "first-in-first-out", especialmente si se considera que por razón de la naturaleza de los productos aquí envueltos, una vez éstos se mezclaran, su identificación se hacía imposible.

De todos modos es un hecho innegable que los productos de petróleo vendidos por la demandante después del 19 de abril de 1956 a vapores para su uso fuera de Puerto Rico y que motivaron la reclamación de reintegro, no agotaron las existencias inventariadas en abril 20 de dicho año, sobre las cuales se había pagado arbitrios. Por lo tanto no existe el riesgo de que el Secretario de Hacienda reintegre contribuciones que real y efectivamente no se hayan pagado.

Sin embargo, el Secretario de Hacienda sostiene que no hay ley que autorice el reintegro que solicita la demandante-recurrida. Su contención es que la Ley de Impuestos Sobre Artículos de Uso y Consumo de 1956, que expresamente derogó la Ley Núm. 1 de 1942 según esta última quedó enmendada por la Ley Núm. 5 de 1947, no contiene disposición alguna facultando al Secretario para reintegrar los arbitrios pagados sobre los productos no tributables.

Obsérvese que la Ley núm. 1 de 1942 contenía una disposición autorizando al Tesorero a reintegrar los arbitrios pagados sobre los productos distribuidos desde Puerto Rico para uso fuera de la Isla a partir del 15 de junio de 1942. Esta disposición era necesaria porque la exención se hizo retroactiva a una fecha anterior a la aprobación de dicha ley y durante ese período se habían vendido productos que caen bajo la exención pero que habían sido introducidos en Puerto Rico antes de crearse la exención. Como bien señala la recurrida dicha ley no contiene disposición alguna para devolver arbitrios que se pagasen desde la fecha de vigencia de la Ley en adelante sobre productos de petróleo introducidos para fines generales y posteriormente distribuidos para fines exentos. Ello era innecesario porque existía una ley que

facultaba al Tesorero a reintegrar cantidades de dinero cobradas indebidamente o en exceso de la cantidad debida. Ley de 12 de febrero de 1904. Véase *Pyramid Products* v. *Buscaglia, Tes.*, 64 D.P.R. 828, 846. La Ley de 1947, enmendatoria de la Ley Núm. 1 de 1942, conservó una disposición similar sobre reintegro y aclaró quiénes eran las personas o entidades con derecho a solicitar el reintegro. Ya hemos dicho que la Ley de Impuestos de 1956, derogatoria de las dos leyes antes citadas, no eliminó la exención sobre los productos aquí envueltos y restableció el arbitrio. Por el contrario, en virtud de dicha ley, los productos de petróleo en cuestión quedaron exentos de toda tributación.

En 10 de mayo de 1949 la Legislatura aprobó la Ley Núm. 232 de ese año, proveyendo para el reintegro o crédito, con intereses, de toda clase de contribuciones pagadas o cobradas ilegal o indebidamente, o en exceso de la cantidad debida. En su artículo 1 dispuso que cuando algún contribuyente creyere que ha pagado o que le ha sido cobrada ilegal o indebidamente, o en exceso de la cantidad debida, una contribución de cualquier clase, podrá solicitar del Tesorero de Puerto Rico, por escrito y exponiendo los fundamentos que tuviere para ello, el reintegro o crédito de la misma. El mismo artículo autoriza al Tesorero, en casos apropiados, bien a iniciativa propia o a solicitud del Tesorero a reintegrar al contribuyente o a acreditarle la contribución cobrada o pagada ilegal o indebidamente, o en exceso de la cantidad debida. A pesar de existir esta ley autorizando el reintegro o crédito de contribuciones en las circunstancias especificadas en el propio estatuto, el Secretario de Hacienda arguye que aquí no se trata de contribuciones pagadas o cobradas ilegal o indebidamente porque cuando se efectuó la introducción en Puerto Rico de los productos, los mismos eran imponibles y que por tanto, el pago y el cobro de los arbitrios era legal.

Difícilmente nos ampararíamos en un argumento técnico como éste para negarle su derecho a un contribuyente. Lo cierto es que los susodichos productos cuando se introducían

en Puerto Rico para uso fuera de la Isla estaban exentos de la imposición y el cobro de toda contribución de arbitrios impuesta por las leyes de rentas internas. Lo que ocurrió fue que en vez de depositarse dichos productos en tanques y almacenes de adeudo, en cuyo caso no tributaban a su introducción, se depositaron en tanques y almacenes de productos destinados a la venta y distribución tanto fuera como dentro de Puerto Rico. Por eso se siguió la práctica por la demandante y aceptada por el Secretario, de solicitar y obtener el reintegro de la contribución pagada cuando vendía productos para fines exentos. No puede sostenerse con buena lógica que los arbitrios no se han pagado indebidamente, cuando los productos sobre los cuales se pagaron, quedaron exentos al ocurrir el suceso que los cualificaba como productos exentos.

Concluimos, en su consecuencia, que en virtud de las disposiciones de la Ley Núm. 232 de 1949, el Secretario de Hacienda tiene autoridad para reintegrar los arbitrios reclamados por la contribuyente en este caso.

*Por todo lo expuesto debe confirmarse la sentencia dictada por el Tribunal Superior.*

El Juez Asociado Sr. Santana Becerra no intervino.